No. 48,235

STATE OF KANSAS, *Appellee*, v. BERT HEATH, *Appellant.*

(563 P.2d 418)

Opinion filed April 9, 1977.

*Brett H. Robinson*, of Topeka, argued the cause and was on the brief for the appellant.

*Gene M. Olander*, district attorney, argued the cause, and *Curt T. Schneider*, attorney general, and *Donald P. Morrison*, assistant district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Bert Heath was convicted by a jury of burglary (K.S.A. 21-3715) and felony theft (K.S.A. 21-3701). He appeals from these convictions.

No question is raised concerning the sufficiency of the evidence so a brief recitation of facts will be sufficient. On October 26, 1974, Jack McGee parked and locked his car in the Capitol Square Apartment parking lot in Topeka, Kansas. The car contained various articles of personal property. On returning to the parking lot with a friend he noticed Michael Jackson in the vicinity of his car carrying some items which appeared to be cassette tapes. In response to a query Jackson asked, "Is that your

car?" On being advised that it was, Jackson voluntarily returned the items he was carrying to the automobile. Jackson then got into an orange Volkswagon automobile bearing Atchison license tag B690 and drove away. There was a passenger in the Volkswagon. McGee testified at the trial the passenger was Bert Heath. He observed Heath from a distance of approximately 30 feet as the orange Volkswagon was leaving the parking lot. After this incident McGee returned to his car and noticed a glass wing had been broken and the car had been entered by force. A shaver, hot comb, and several other articles, including clothing, were missing. He immediately notified the police.

Five days later a patrolman in the Topeka Police Department located the orange Volkswagon automobile bearing an Atchison B690 license tag. He stopped the vehicle. Michael Jackson was the driver. The defendant, Bert Heath, was a passenger in the front seat. A second police officer was called to the scene and Jackson and Heath were placed under arrest. They were advised of their rights. A written consent to search the automobile was obtained from Michael Jackson. This written consent form was later introduced at the trial. On searching the vehicle the officers found a Norelco electric shaver in the back seat of the automobile behind the driver's seat. This and other items found in the car were introduced at the trial. These were identified by Mr. McGee as being his property taken from the automobile on October 26th.

The defendant, Bert Heath, raises three points. The first concerns the admission in evidence of the articles obtained in the search of the orange Volkswagon. The contention is made that the officer did not obtain a search warrant or a consent to search the automobile from the defendant Heath. The orange Volkswagon was owned by Brenda Boldredge and she testified that it had been loaned to Michael Jackson. She further testified that she knew the defendant Heath vaguely. She had consented to Michael Jackson's use of the automobile.

One who is neither an owner nor in possession of an automobile has no standing to challenge a search of the automobile. In *State v. Boster*, 217 Kan. 618, 539 P. 2d 294, this court stated:

"On numerous occasions we have applied this principle to the search of an automobile and held that one who is neither an owner nor in possession of an automobile lacks standing to invoke the constitutional guarantee of immunity from unreasonable search and seizure. (*State v. Edwards*, 197 Kan. 146, 415 P.2d 231; *State v. Roberts*, 210 Kan. 786, 504 P.2d 242.) . . .

"Similarly, we denied a motion to suppress for lack of standing in *Roberts*, where the defendant was only a passenger in the car that was searched and he claimed no ownership or interest in it." (p. 621.)

The defendant now asks this court to reconsider its holdings in *Boster*, *Edwards* and *Roberts*. We have done so and see no reason to change the rule of law stated in those cases. In the present case Jackson was in possession of the car owned by his girl friend. The defendant Heath was neither the owner nor in possession of the automobile. Heath lacks standing to invoke the constitutional guarantee of immunity from unreasonable search and seizure. The consent given by Jackson was valid and the articles seized were properly admitted in evidence.

The defendant's second and third points on appeal relate to improper impeachment of the defendant on cross-examination by the prosecutor concerning Heath's pre-trial silence after receiving *Miranda* warnings, and improper comment by the prosecutor during closing argument. We will treat these two matters together. It should be noted that the present case was tried in March, 1975, prior to the decision in *Doyle v. Ohio*, 426 U. S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, and prior to our decision in *State v. Mims*, 220 Kan. 726, 556 P.2d 387. The prosecution did not have the benefit of those two cases at the time the defendant was tried. In *Mims* we held:

"The use for impeachment purposes of a defendant's silence at the time of his arrest and after receiving *Miranda* warnings, violates the due process clause of the Fourteenth Amendment to the United States Constitution. (Following *Doyle v. Ohio*, 426 U. S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240.)" (Syl. 1.)

In *Mims* it is stated:

"We interpret the decision of the United States Supreme Court in *Doyle* to settle the question so as to make it constitutionally impermissible for a state prosecutor to impeach a defendant's exculpatory story told for the first time at the trial by cross-examining him as to his post-arrest silence after receiving the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A. L. R. 3d 974. We specifically overrule syllabus eight and corresponding portions of the opinion in *State v. Bly*, supra, insofar as they are in conflict with *Doyle v. Ohio*, supra. . . ." (p. 730.)

It is constitutionally impermissible for a state prosecutor to impeach a defendant's exculpatory story told for the first time at the trial by cross-examining him as to his post-arrest silence after receiving the *Miranda* warning, and comment on his post-arrest

silence during the state's closing argument should not be permitted.

There can be little doubt the rule in *Doyle* and *Mims* was violated in the present case. On cross-examination the following colloquy occurred between the prosecutor and the defendant while defendant was on the stand:

"Q. Over four months has elapsed in this interim since October 31, 1974, and this is the first time that this explanation has come forth, is that correct?

"A. Has been brought besides to my lawyer, besides talking to my lawyer about it.

"Q. I don't know what you said to your lawyer—

"A. (Interrupting) The first time it has been out in court, yeah.

"Q. The first time that the State has been aware of it, isn't that right?

"A. Yeah, I guess.

"Q. Well, if you had an alibi, if you had a person that would corroborate what you are now testifying to, why is it that you decided that you didn't want to tell the State about it?

"A. The State never asked me.

"Q. Never asked you?

"A. No.

"Q. Well, didn't you tell the police you were not involved in the crime?

"A. Yeah, I told them that.

"Q. What was that in response to?

"A. What?

"Q. What was that in response to?

"A. They asked me, they wanted to read my rights.

"Q. And at that time you said, 'I'm not involved in the crime'?

"Q. Yeah, I told them I didn't have nothing to do with it, you know, whatever it is.

"Q. But at the same time you decided that it would not be in your best interest to tell them that, in fact, at that time you had an alibi?

"A. No."

In addition, during closing argument the prosecutor commented on defendant's pre-trial silence as follows:

"Just put yourself in this situation, please. You walk out of this courtroom today and out on the street, and lo and behold the police pull up behind you and stop you and put you in jail. Bam, you are under arrest. Why, because you are a suspect in a burglary-theft case. You say, 'I didn't commit a burglary-theft', you know darn good and well that you never did it, and, in fact, you say. 'What burglary and theft, when did it occur'. You say, 'I was not there'. Isn't that a natural response, or do you wait literally months later and then say, 'Hey, you have got the wrong person. I was not there. I was here'. Do you wait four months later and then all of a sudden tell the State for the first time that you were with your girlfriend on that date?"

The defendant's objection to this argument was noted by the trial court but no action was taken.

The state now urges this court to apply the Kansas harmless error rule as declared in K. S. A. 60-2105 and recognized in *State v. Thompson*, 221 Kan. 176, 558 P. 2d 93. However, in the present case the defendant Heath was a passenger in the car and there was no testimony indicating his actual participation in the burglary and theft other than his presence and participation as an aider and abettor. The cross-examination and closing argument was a direct attack upon defendant's defense of alibi. Due to the persistence of the prosecutor we are not able to say that these errors had little, if any, likelihood of having changed the result of the trial. The court cannot declare such a belief beyond a reasonable doubt.

The state further argues that our holding in *Mims* should be given only prospective application from the date on which the verdict was returned in that case, March 7, 1975. In support of this argument the state cites *Johnson v. New Jersey*, 384 U. S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772; *Linkletter v. Walker*, 381 U. S. 618, 14 L. Ed. 2d 601, 85 S. Ct. 1731; *Tehan v. Shott*, 382 U. S. 406, 15 L. Ed. 2d 453, 86 S. Ct. 459, reh. den. 383 U. S. 931, 15 L. Ed. 2d 850, 86 S. Ct. 925; and other related cases.

We note that in *Doyle v. Ohio*, supra, the United States Supreme Court reversed and remanded the cases to the Ohio state court for new trials. The cases had been directly appealed and the cases affirmed by the Ohio appellate courts. The convictions were reversed on writs of certiorari. So the convictions in *Doyle* had not become final when the high court spoke. We are unable to find where the United States Supreme Court has passed on the question of retroactive-prospective operation of the new rule declared in *Doyle.*

A conviction is generally not considered "final" until (1) the judgment of conviction has been rendered, (2) the availability of an appeal has been exhausted, and (3) the time for any rehearing or final review has passed. (*Linkletter v. Walker,* supra; see Anno., Overruling Decision—Application, 10 A.L.R. 3d sec. 8 [d], p. 1403.) In the present case the ruling questioned at the trial was appealed directly to this court. Defendant's convictions were not final and under the rule as applied in *Johnson v. New Jersey,* supra; *Linkletter v. Walker,* supra; and *Tehan v. Shott,* supra, we feel the circumstances are such that prospective operation of the *Doyle* and *Mims* rule should not be declared in the present case.

The judgment and convictions are reversed and the case is remanded for a new trial.