No. 48,670

STATE OF KANSAS, *Appellee,* v. ELGIT CLARK, *Appellant.*

(574 P 2d 174)

Opinion filed November 5, 1977.

*T. Richard Liebert,* of Liebert & Liebert, of Coffeyville, was on the brief for the appellant.

*Curt T. Schneider,* attorney general, *Paul D. Oakleaf,* county attorney, and *Richard A. Medley,* assistant county attorney, were on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal from a jury verdict which found Elgit Clark (defendant-appellant) guilty of one count of felony theft (K.S.A. 21-3701) and one count of burglary (K.S.A. 21-3715).

The issue raised on appeal is whether a state prosecutor may impeach a defendant's alibi defense, told for the first time at trial, by cross-examining him as to his post-arrest silence after receiving the *Miranda* warning and commenting on such silence during closing argument, when the defendant carried on limited discussion with police after arrest, but was silent as to matters subsequently asserted at trial.

The Westco Jewelry Store in Independence, Kansas, was burglarized at approximately 11:30 p.m. on June 18, 1975. The burglars entered through a skylight in the roof of the building and carried away $5,000 worth of jewelry. There were no witnesses to the burglary other than the participants.

Approximately one week later Jake Osborn, a sixteen-year-old boy, was arrested for stealing money from the purse of a Mrs.

Caldwell. Jake was a friend of Mrs. Caldwell's son, Greg, and was living with the Caldwells at the time. During the course of his interrogation by Captain Stan Burns of the Independence Police Department, Jake Osborn confessed his involvement in the Westco burglary. He also named the appellant, Elgit Clark, as one of his accomplices to the crime.

Briefly summarized, at trial the verdict of the jury was based primarily upon Jake Osborn's testimony, and his credibility was seriously attacked by appellant's counsel.

The appellant testified in his own behalf. His defense was alibi. The appellant told of his whereabouts from 10:00 p.m. on the evening of the crime to 3:00 a.m. the next morning. He denied participating in the crime, but he admitted knowledge of the circumstances surrounding it. He identified eleven persons by name who were with him at various times during the evening. Five of those persons were called as witnesses for the appellant, one was called for the state and five of the witnesses failed to appear.

The jury returned a verdict of guilty. The appellant's motion for a new trial was denied and his appeal was duly perfected.

The appellant contends the prosecutor's cross-examination of him, wherein it was elicited he had not told police about his alibi witnesses at the time of his arrest, constituted prejudicial error. This testimony is set out verbatim in the record as follows:

"Q. Were you asked that night, the night you were arrested, about where you were?

"A. Where I was on what night?

"Q. 18th. The same night you have just testified where you had been.

"A. I can't remember whether I was asked that or not.

"Q. Did you tell the police where you had been that night?

"A. If they asked me I told them.

"Q. You did? Are you sure of that?

"A. No, I am not. I can't remember what I said. I can't remember what I said.

"Q. You didn't tell them where you had been that night, did you? This is the first time you have ever told this story, isn't it?

"A. Yeah, yeah, first time I ever told you any story.

"Q. That is not true. You were asked about where you were on the 18th, the night you were arrested.

"A. What did I say?

"Q. I am asking you.

"A. I don't remember saying anything."

Additionally, the appellant predicates error upon reference to

his pretrial silence, made over objection, during the state's closing argument:

". . . Another thing I think is an important thing to remember as far as Elgit Clark is concerned. He was arrested 10 days after this happened. Stan Burns testified about what happened, testified that he was there. Where were all those people that could verify where Elgit Clark was then? He remembers them all now. He subpoenaed them all here to court, but 10 days after this happened he didn't name one. Now, is that the act of an innocent man? This is the first time we have heard this story. Ten days after this happened—almost four months ago—he had the opportunity. We could have found the people 10 days afterwards. We can't now."

When an accused elects to testify in his own behalf, his post-arrest silence may not be used solely to impeach his exculpatory testimony. This rule was established in *Doyle v. Ohio,* 426 U.S. 610, 49 L.Ed.2d 91, 96 S.Ct. 2240, where the court states:

". . . [T]he use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment. . . ." (p. 619.)

The substance of the holding is that a state prosecutor may not seek to impeach a defendant's exculpatory story, which is told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving *Miranda* warnings at the time of his arrest, and that use of a defendant's post-arrest silence in such manner violates due process.

This rule was followed in *State v. Mims,* 220 Kan. 726, 556 P.2d 387, and *State v. Heath,* 222 Kan. 50, 563 P.2d 418. These cases both involved the use for impeachment purposes of the accused's failure to name his alibi witnesses at the time of arrest. (We note the prosecution did not have the benefit of these cases at the time appellant was tried.) In the *Mims* opinion overwhelming evidence of guilt permitted us to apply the harmless error rule. In the *Heath* opinion, on the other hand, the conviction was reversed and the case remanded for a new trial where there was no testimony indicating the defendant's actual participation in the burglary other than his presence as an aider and abettor. In the present case, the appellant testified about his conversation with the police. The record provides:

"Q. What did you tell them at that time?
"A. Well, I told them I didn't know nothing about it, about how it was supposed to have been did but I had heard who went in there. I had heard—had heard who went in there and I guess that is about all. I had heard a lot about it, you

know, and I told them what I heard, told them, like the people around there, you know. I can find out a lot of things, because—well,—

"Q. I just want to know what your conversation with Stan Burns was.

"A. I can't remember exactly what they said. All I know they tried to accuse me of it and I told him I didn't do it and I didn't have anything to do with it.

"Q. You told him at that time?

"A. Right."

While the *Doyle* opinion effectively closed the door on the use of an accused's silence after *Miranda* warnings to impeach an exculpatory explanation subsequently offered at trial, the extent to which an accused can "talk" and still assert the silence requirement remains open. Our review has failed to find a single case dealing specifically with the issue whether a defendant's pretrial silence may be used for impeachment after *Doyle* when the defendant engages in some discussion after arrest, but he fails to expressly assert his right to remain silent.

In *People v. Robinson,* 44 Ill. App. 3d 447, 448, 358 N.E.2d 43 (1976), the defendant was apprehended with a gun in his hand. He admitted to the police he shot the victim, but he asserted his privilege to remain silent stating, "I know my rights, I did it, but I'm not going to tell you why." In closing argument, reference was made to the fact the defendant did not tell the police he acted in self-defense. The court states:

". . . [A] person under arrest does not have to refrain from saying anything in order to preserve his fifth amendment rights. It is his privilege to stop at any point during custodial interrogation to assert his rights. . . ." (p. 449.)

The court leaves open the question when a defendant does not remain completely silent and fails to expressly assert his privilege to remain silent, whether his failure to offer any exculpatory information to the police may be used for impeachment after *Doyle.*

Although factually similar to the case at hand, *People v. Patterson,* 44 Ill. App. 3d 894, 358 N.E.2d 1164 (1976), is decided on evidentiary grounds. During rebuttal argument, counsel for the state implied defendant's alibi had been recently fabricated and said:

" 'Well, the police cannot check an alibi, when he never tells them about it for over three years. * * * Do you wait for over three years and then spring it during the middle of trial, and then turn around and have the gall to say why didn't the police check it in March [when defendant was arrested]? He [sic] reason they didn't check it in March was because he didn't tell them about it in March.' " (p. 896.)

The court reversed the defendant's conviction of armed robbery because the comment went outside the evidence and states:

". . . We do not reach or consider the possible significance on constitutional grounds of the use for impeachment purposes of defendant's failure to assert his alibi after his arrest or at the preliminary hearing. . . . Whether such evidence would be constitutionally permissible on retrial of this case depends in part on several facts, not present here, such as the substance of defendant's conversations with the police and whether *Miranda* warnings had actually been given. . . ." (p. 898.)

See also *United States v. Harp,* 536 F.2d 601 (5th Cir. 1976) and *People v. Monaghan,* 40 Ill. App. 3d 322, 352 N.E.2d 295 (1976).

Is the defendant here under a duty to volunteer his exculpatory story? We think not.

The case of *State v. Deatore,* 70 N.J. 100, 358 A.2d 163 (1976), arose while the *Doyle* decision was pending. There, the defendant was silent, and he failed to voice any exculpatory information to the police at or about the time of his arrest. On direct examination, he testified he was elsewhere from the crime at the time of the alleged offense. On cross-examination, he was asked if he had made any statements to such effect when he was arrested or later when he learned of specific charges. To this he replied he only remembered asking for a receipt for his money, which was taken by the police, and he denied he told the police he had nothing to say. The interrogation concluded with the prosecutor asking whether it was true he had refused to make any statement. His answer was, "Nobody asked me." The court concludes:

". . . [I]t is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. . . .
". . . (Under this view, it is certainly an *a fortiori* situation when a defendant, like Deatore, was not subject to police interrogation, but his exculpatory trial testimony is sought to be impeached by his *failure to volunteer* that story when arrested.) . . ." (p. 110.)

The court reversed the defendant's robbery conviction holding it is error to permit a defendant who asserts an alibi defense at trial to be cross-examined on his failure to inform the police of his alibi at the time of arrest.

Similarly, in *People v. Suggs,* 50 Ill. App. 3d 778, 365 N.E.2d 1118, 1120 (1977), the defendant testified he did not tell the police about what happened after the crime because they did not ask him. During rebuttal argument, the comment was made, "The

State had no way of knowing what he was going to testify to because he hasn't told anybody. He hadn't told the police." Following *Doyle v. Ohio,* supra, the court said:

".  .  . On close examination of the entire record, we are unable to conclude that defendant's conviction was not a product of the repeated and accentuated evidence of his failure to tell his exculpatory story to the police.

"As the Supreme Court observed in *United States v. Hale* (1976), 422 U.S. 171, 180, 95 S.Ct. 2133, 45 L.Ed.2d 99: 'Not only is evidence of silence at the time of arrest generally not very probative of a defendant's credibility, but it also has a significant potential for prejudice. The danger is that the jury is likely to assign much more weight to the defendant's previous silence than is warranted.' " (p. 1121.)

In the case before us, the appellant testified at his trial he could not remember whether he was asked about his whereabouts and what he said. Further, during his closing argument, the prosecutor improperly commented about the appellant's failure to volunteer the names of his witnesses. The record indicates the following objection was made:

"MR. LIEBERT:    Your Honor, we object to his comment since there is nothing in the evidence that this man was ever given the opportunity and there is no evidence on that.

"MR. THOMPSON:    There certainly is, Your Honor. Stan Burns was asked about their conversation and asked about the people that this defendant named and he testified about that.

"THE COURT:    This is correct, proceed."

We have examined the record and the testimony of Stan Burns and find this witness never was asked about alibi witnesses, nor did he comment about them. Thus, the trial court's comment was highly prejudicial to the appellant.

Finally, we note this case does not fall within any of the narrow exceptions to the *Doyle* rule. (See *Doyle v. Ohio,* supra, n.11, [when the defendant testifies to an exculpatory version of events and claims to have told the police the same version on arrest, defendant's earlier silence could be used to challenge his testimony as to his behavior following arrest]; *United States v. Griffin,* 530 F.2d 101 [5th Cir. 1976], [when the defendant's testimony creates the misleading impression the prosecutor had been previously informed of the defense and he either failed to investigate the story or suppressed the results of investigation, the prosecutor was permitted to question as to silence]; *United States v. Fairchild,* 505 F.2d 1378 [5th Cir. 1975], [when the defendant

attempts to create the impression he cooperated with the police following arrest, rebuttal testimony he remained silent is permissible]; and *Neal v. State,* 529 P.2d 526 [Okla. 1974], [when the defendant declares, on direct examination, his reasons for remaining silent at arrest, the prosecutor may cross-examine him on those reasons and comment upon the fact he so testified.])

An accused may remain completely silent, and he is under no duty to volunteer his exculpatory story. Thus, he should be afforded the same right after some discussion with the police when he remains silent as to matters later asserted at trial. We hold *Doyle* prohibits a state prosecutor from impeaching a defendant's alibi defense told for the first time at trial, when the defendant carried on limited discussion with police after arrest, but remained silent as to matters subsequently asserted at his trial.

We are mindful of the argument that such a rule may give rise to perjury. However, the need to protect the innocent person accused of crime, who remains silent when accused of guilt, far outweighs any need to guard against the mere possibility of perjury.

We have carefully reviewed the other points asserted on appeal and find no reversible error as to them.

The judgment is reversed and the case is remanded for a new trial.

FROMME, J., dissenting. In reversing the defendant's conviction the reliance of the court on *Doyle v. Ohio,* 426 U.S. 610, 49 L.Ed.2d 91, 96 S.Ct. 2240, and *State v. Heath,* 222 Kan. 50, 563 P.2d 418, is totally unjustified under the facts of the present case.

The constitutional basis upon which *Doyle* and *Heath* rest is an accused's constitutional right to remain silent and the assurance that the exercise of such right cannot be used against him at trial. The *Doyle* reasoning was prefaced upon the importance which the high court attached to the warnings mandated in *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974. These warnings were dictated in *Miranda* as a means of safeguarding Fifth Amendment rights and include a warning that the accused has the right to remain silent but if he chooses to talk anything he says may be used against him.

In *Doyle* the court points to this warning and then sets forth the reason for the *Doyle* decision as follows:

" . . . Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial. . . ." (p. 618.)

The *Doyle* court then goes on to quote with approval from a concurring opinion of Mr. Justice White in *United States v. Hale,* 422 U.S. 171, at 182-183, 45 L.Ed.2d 99, 95 S.Ct. 2133, where it is stated:

" '[W]hen a person under arrest is informed, as *Miranda* requires, that he may remain silent, that anything he says may be used against him, and that he may have an attorney if he wishes, it seems to me that it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony. . . . Surely Hale was not informed here that his silence, as well as his words, could be used against him at trial. Indeed, anyone would reasonably conclude from *Miranda* warnings that this would not be the case.' " (426 at 619.)

Under the facts of that case Mr. Doyle was given the warning. He chose to remain silent until the trial, thus exercising his constitutional right. The high court held (1) that the prosecutor could not question him as to his silence after the warning and before he chose to tell his story at trial, and (2) that the prosecutor could not comment on this period of silence in an effort to impeach the accused's later story at trial.

A similar factual situation was presented in *State v. Heath,* supra. When Mr. Heath was arrested and advised of his rights he chose to remain silent. At the trial his defense was alibi. After the *Miranda* warning was given the prosecutor not only questioned him as to his silence before trial but also argued that his silence was sufficient to throw doubt on his defense of alibi.

Now, let us turn to the facts of the present case. There is no testimony in the record that Elgit Clark was advised of his *Miranda* rights or that he exercised his right to remain silent. We can only assume from the silent record he was given the warning.

At the trial Clark testified in his own behalf that when he was arrested for the crime he was taken to the county attorney and Stan Burns, a police officer, and they had a conversation with him. This is his testimony in summary form as it appears in the record:

" '. . . I told them I didn't know nothing about it about it was supposed to have been did, but I had heard who went in there. I had heard—had heard who went in there and I guess that is about all. I had heard a lot about it, you know, and I told them what I heard, told them, like the people around there, you know. I can find out a lot of things, because—well,'. The witness stated that 'I can't remember exactly what they said. All I know is they tried to accuse me of it and I told them I didn't do it and I didn't have anything to do with it.'

"They then took him to jail."

### On cross-examination Clark testified:

"[T]hat when he talked to the police the night he was arrested he told them he didn't want to give them any names about what he had heard because he didn't want to be a 'snitch', but that he would help them in any way he could. The witness was asked why Jake Osborn would make up a story involving him in a burglary, if he was not there; the witness replied that the only thing he could think of was to 'keep somebody else out of trouble'."

It is apparent from the defendant's own testimony at trial that he did not exercise his right to remain silent after his arrest; therefore anything he said after the *Miranda* warning can and should be used against him.

In order to understand the true thrust of that portion of defendant's verbatim testimony which appears in the majority opinion it should be noted that defendant testified at length at the trial. He told of his whereabouts from 10:00 p.m. on the evening of the crime to 3:00 a.m. the next morning. His activities were varied and quite colorful. They started with visiting the "Hut" and continued with walking around town, visiting with named persons, stopping a fight in which a girl had a blouse ripped in half, going to a girl's apartment and entering through the transom, leaving in a car owned by another, being chased, meeting a drunk, witnessing another fight between three women and finally returning home at 3:00 a.m. In his trial testimony defendant identified eleven persons by name who were with him at various times during the evening. Five were called as witnesses by the defendant, one by the state and five did not testify at the trial.

Three additional questions and answers should precede the verbatim testimony appearing in the majority opinion. They appear in the record as follows:

"Q. Now, you remember obviously pretty well where you had been the night this incident occurred. You told us everywhere you have gone and what you did the times that you were there, the people that you saw. You remember that pretty well, don't you?

"A. I don't remember it that well.

"Q. You could be mistaken about some of the things, is that right?
"A. I could be. I mean as far as times and things I could be.
"Q. You couldn't be mistaken about the people though that you saw?
"A. No, I am sure about the people."

Considering the testimony of the defendant as a whole it is apparent to me that the cross-examination was proper. The defendant did not remain silent after his arrest and the story he told the officers at that time was not the story which he told at the trial. In *State v. Faulkner,* 220 Kan. 153, Syl. 12, 551 P.2d 1247, it is held that an accused's testimony relevant to an issue in the case may be impeached by contradiction on cross-examination. Surely the law has not reached a point where the defendant's trial testimony cannot be examined in light of his previous statement to the officers.

Now as to the prosecutor's comment in closing argument: The thrust of his remarks is to explain to the jury why the five missing witnesses were not called to testify at the trial. The inability of the state to produce those witnesses arose from a lack of knowledge as to their names. This was not an impermissible comment on defendant's right to remain silent. It is a settled rule that the failure of a party to produce available evidence may give rise to an inference that it would be adverse to the party who could have produced it. (*State v. Robinson,* 219 Kan. 218, Syl. 1, 547 P.2d 335.) The prosecutor was merely commenting as to the reason this inference should go against the defendant, not the state.

It should also be noted as a basis for upholding the defendant's conviction that no objection was made during the trial that defendant's right to remain silent was being violated. The only objection made was during the state's closing argument. Defense counsel merely stated there was nothing in the evidence to justify the prosecutor's comments on why the missing witnesses were not produced. The "contemporaneous objection rule" should be honored in this case. See K.S.A. 60-404 and case annotations cited thereunder.

One final reason in support of my position should be noted. The basis which is adopted by the majority for reversal of the defendant's conviction is not encompassed by any of the three points presented by appellant on appeal. The points argued and briefed by appellant are:

"I. The State's direct evidence was so contradictory and unreliable that it could not support a verdict of guilty.

"II.  The evidence of the State does not support a finding beyond a reasonable doubt that the Defendant was with the alleged accomplice when the latter confessed he committed the burglary and larceny.

"III.  The Defendant was deprived of a fair trial by the trial court's prejudicial error made by comments supporting the argument of the prosecutor intended to discredit the Defendant's testimony of an alibi."

The *Doyle* and *Heath* cases are neither cited in the briefs nor discussed by appellant. The judgment should be affirmed and I respectfully dissent.

OWSLEY and MCFARLAND, JJ., join in the foregoing dissenting opinion.