FILED
United States Court of Appeals
Tenth Circuit

**June 19, 2009**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

PATRICK HOBBS,

      Petitioner-Appellant,

v.

DAVID R. MCKUNE, Warden,
Lansing Correctional Facility;
PHILL KLINE, Attorney General,
State of Kansas,

      Respondents-Appellees.

No. 06-3428
(D.C. No. 06-CV-3133-RDR)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MURPHY** and **O'BRIEN**, Circuit Judges, and **KANE**,[**] Senior District Court Judge.

_____

Patrick Hobbs, a Kansas state prisoner serving a 174-month sentence on a 2001 vehicular homicide conviction, commenced this appeal under 28 U.S.C. § 2253(c) seeking a certificate of appealability to challenge the sentencing court's actions in using a prior juvenile residential burglary adjudication to enhance his sentence under the Kansas Sentencing Guidelines. After oral argument, the matter stands submitted on the question

_____

[*]    This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.

[**]    The Honorable John L. Kane, Jr., Senior United States District Judge for the District of Colorado, sitting by designation.

of whether the 1995 juvenile burglary conviction may be treated as a "person" felony for purposes of sentencing under the Kansas Sentencing Guidelines. While we express dismay that poor record-keeping in the Kansas juvenile courts creates a situation where it is impossible to say, with 100% confidence, that Petitioner's sentence was properly enhanced by the state court, the issue is one of state law and was resolved with finality by the Kansas Supreme Court. The question before us on habeas review is whether the state sentencing and appellate courts' actions violated Petitioner's clearly established federal constitutional rights. Under all applicable Supreme Court precedent, we conclude they did not. The district court's denial of habeas relief is AFFIRMED.

I.

Facts and Procedural History.

The facts underlying Hobbs's 2001conviction and sentence forming the basis of his federal habeas petition are not at issue on appeal and are adequately set forth in the Kansas Supreme Court's decision confirming both. *See State v. Hobbs*, 71 P.3d 1140 (Kan. 2003). Briefly summarized, on the night of June 5, 2000, when he was 21 years old, Hobbs drove several friends from a concert venue in Bonner Springs, Kansas. According to witnesses, while approaching heavy traffic, Hobbs passed cars on the shoulder of the road at a high rate of speed and then attempted to cut back into the traffic lane. While doing so his car struck the back of one vehicle, went airborne, struck the top of another vehicle and skidded into the back of a third. A passenger in the first vehicle

2

died as a result of injuries from the crash, and several others were injured. Hobbs initially fled the scene but was found wandering down a highway hours later.

On April 6, 2001, Hobbs was convicted in Wyandotte County District Court on charges of involuntary manslaughter, a severity level 5 person felony, in violation of Kan. Stat. Ann. § 21-3404; aggravated battery, a severity level 5 person felony, in violation of Kan. Stat. Ann. § 21-3414; and leaving the scene of an injury accident, a misdemeanor, in violation of Kan. Stat. Ann. § 8-1602. At the time, Hobbs had three previous convictions on his record: a 1995 juvenile adjudication in which Hobbs pled to one count of burglary; an adult burglary conviction in 1997; and a drug conviction in 1998. After a series of delays in which the sentencing judge in the vehicular homicide case ordered briefing, scheduled argument and then overruled Hobbs's objection to his presentence investigation (PSI) criminal history report, Hobbs was sentenced in December 2001 to consecutive prison terms of 128, 34 and 12 months, respectively.

The 128-month sentence included a 68-month enhancement based on Hobbs's disputed status under the Kansas Sentencing Guidelines as a level-five, Category B offender with two previous "person" felony convictions. *See* Kan. Stat. Ann. § 21-4704. Hobbs did not dispute that the 1997 burglary conviction was a "person" felony, but objected strenuously to the classification of his 1995 juvenile conviction as a "person" felony when the Journal Entry of his plea characterized the burglary charge as being a "severity level 7 *nonperson* felony." While Hobbs has never denied that his 1995 plea was to a residential burglary (a "person" felony under the charging statute), he maintained

3

the Journal Entry recording that adjudication as a "nonperson" felony was dispositive and that he should properly have been considered a Category C offender not subject to the 68-month enhancement.[1]

In a written decision issued on the parties' briefs and after oral argument (*see* Tr., R., vol. 13), the sentencing court disagreed, finding "the categorization of the residential

---

[1]     The 1994 juvenile Complaint and 1995 Journal entry are important to understanding the actions of the various state courts that reviewed Hobbs's sentence in the underlying case. In the Complaint (Aplt. App. 84), Hobbs was charged with two counts – the first for theft of a shotgun, shotgun case and liquor, and the second for burglary. The burglary (Count II), alleged Hobbs unlawfully entered a "building," which was a "house," "owned by Cynthia Britt," "which is a dwelling," "with the intent to commit a theft, *a severity level 7 non-person felony*, therein in violation of K.S.A. 21-3715." *Id.* (emphasis added). The Kansas burglary statute at Kan. Stat. Ann. § 21-3715 defines three different categories of burglary, including the entry into a

> (a) Building, manufactured home, mobile home, tent or other structure which is a dwelling, with intent to commit a felony, theft or sexual battery therein;
>
> (b) building, manufactured home, mobile home, tent or other structure which is not a dwelling, with intent to commit a felony . . . ; or
>
> (c) motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property, with intent to commit a felony . . . .

The statute goes on to state that:

> Burglary as described in subsection (a) is a severity level 7, person felony.
> Burglary as described in subsection (b) is a severity level 7, nonperson felony. . . .

In the Journal Entry on Hobbs's plea to Count II, the juvenile court judge indicates "Respondent waived reading of the Complaint," and "admitted his guilt as to Count II of the Complaint." (Aplt. App. 86-87.) The Court concludes that "Respondent was determined to be a Juvenile Offender as to Count II of the Complaint 94JV2481 (Felony, Kan. Stat. Ann. § 21-3715, Severity Level 7, non-person felony), within the meaning of the Juvenile Code of the State of Kansas, applicable thereto."

burglary which was the foundation of the defendant's 1994 juvenile conviction as a non-person felony in both the charging language and the Journal Entry signed by the judge was a clerical error." *See* Order 3 (Aug. 15, 2001) (Aplt. App. 72). In reaching this conclusion, the trial judge relied heavily on a 1998 PSI criminal history report (PSR) that had been prepared in connection with the 1997 drug case, which also included the 1995 juvenile adjudication and classified it as a "person" felony. After lengthy plea negotiations that resulted in Hobbs receiving a significant downward departure to his sentence, Hobbs had approved the criminal history computation, including the "person" felony characterization of the 1995 plea, on the record. (*Id.*) Writing that the 1995 burglary conviction was "clearly a residential burglary and therefore a person felony pursuant to the Kansas Sentencing Guidelines," the court applied Kan. Stat. Ann. § 21-4714(f) to take judicial notice of the accuracy and authenticity of the 1998 PSR, and overruled Hobbs's objection to his 2001 PSR, which reiterated the characterization of the 1995 juvenile adjudication as "person" felony. (*Id.* at 71-72.)

Hobbs appealed both his conviction and his sentence, asserting numerous claims of error, including the criminal history computation characterizing the 1995 adjudication as a "person," rather than "nonperson" felony. In a lengthy opinion filed July 11, 2003, the Kansas Supreme Court rejected each of his asserted claims of error and affirmed both his conviction as well as the sentencing court's findings and conclusions concerning the criminal history computation, *see Hobbs*, 71 P.3d 1140, and thereafter denied Hobbs's Motion for Rehearing or Modification. Hobbs filed no petition for certiorari with the

5

U.S. Supreme Court and his conviction therefore became final 90 days after September 23, 2003. *See State v. Heath*, 563 P.2d 418, 422 (Kan. 1977)(discussing finality of criminal convictions).

In March 2005, Hobbs filed a motion for post-conviction (state habeas corpus) relief in the Wyandotte district court pursuant to Kan. Stat. Ann. § 60-1507. He raised multiple claims of ineffective assistance of counsel and urged reconsideration of the "person"/"nonperson" criminal history calculation issue under a then-recent Kansas Supreme Court case he believed supported his assertion that the Journal Entry for his 1995 juvenile adjudication trumped all other evidence in characterizing a state conviction. *See State v. Kralik*, 80 P.3d 1175 (Kan. 2003). Judge Sieve, the same judge who had presided over Hobbs's original trial and sentencing, distinguished *Kralik*, denied the motion and Hobbs appealed. On March 17, 2006, the Kansas Court of Appeals issued a written decision affirming the district court. *Hobbs v. State*, No. 94,194 (Kan. Ct. App.) (unpublished decision).

Rather than pursue a further state court appeal, Hobbs filed a petition for federal habeas relief under 28 U.S.C. § 2254 in the United States District Court for the District of Kansas asserting seven grounds for relief. With respect to the criminal history computation and the state sentencing judge's finding that the 1995 juvenile adjudication was a "person," rather than "nonperson," felony, Hobbs argued the state court's actions violated his federal constitutional rights under the Fifth, Eighth and Fourteenth Amendments generally, and also specifically in contravention of *Shepard v. United*

6

*States*, 544 U.S. 13 (2005).  (Aplt. App. vol. 2, 134.)  In particular, Hobbs argued

*Shepard*'s holding limiting the inquiry a sentencing court may make in determining

whether a prior conviction qualifies as a predicate offense crime for purposes of the

federal Armed Career Criminal Act (ACCA) "mandated" habeas relief in his case.  (*Id.*)

       In a substantive Memorandum and Order dated November 8, 2006, the District

Court rejected each of Hobbs's federal habeas claims.  *Hobbs v. McKune*, No. 06-3133-

RDR, slip op., 2006 WL 3246772 (D. Kan. Nov. 8, 2006)(unpublished decision), (Aplt.

App. 5-23).   With respect to Hobbs's *Shepard* arguments, the district court concluded (1)

*Shepard* did not apply retroactively in this case because Hobbs's conviction was final

before it was decided; (2) *Shepard*'s holding was limited to matters of federal statutory

interpretation and did not articulate a governing principle of constitutional law; and (3)

the state sentencing court's actions in this case comported with the *Shepard* requirements

in any event.  (Aplt. App. 12-13.)[2]  Hobbs filed a Notice of Appeal, and requested a

certificate of appealability from the District Court.

       On December 13, 2006, the District Court denied Hobbs's request for a certificate

of appealability. (Aplt. App. 23(A).)  Because a certificate of appealability is a

prerequisite to any consideration of Petitioner's appeal on its merits, *see* 28 U.S.C.

§ 2253(c)(1) *and* Fed. R. App. P. Rule 22(b), Appellees notified the court of their intent

---

[2]     We note the district court addressed Hobbs's *Shepard* argument without addressing the State's contention at pages 9 and 15-17 of its Answer and Return that Hobbs's failure to assert "any" constitutional claims regarding the computation of his criminal history renders habeas review of that issue procedurally defaulted.  (Aplt. App. Vol II pp. 207, 213-15.)

not to file a response brief unless otherwise ordered.  Hobbs filed his brief on January 3, 2007, and on April 11, 2007, the parties were notified that the case would be submitted to a panel on the briefs under Rule 34 for Conference Calendar.

The Conference Calendar panel did not issue a ruling on the certificate of appealability and instead, withdrew the matter from the Conference Calendar and directed Appellees to file a response on the limited issue of whether Hobbs's "1995 juvenile burglary conviction may be treated as a person felony for purposes of sentencing."  *See* Order, dated July 11, 2007 (Baldock, J.).  The matter was set for argument on the November 2007 oral argument calendar and is now ripe for determination.

II.

Standard of Review.

Because Hobbs filed his habeas petition after April 24, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA) govern the proceedings.  *See Martinez v. Zavaras*, 330 F.3d 1259, 1262 (10th Cir. 2003) (citing *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997)).  The AEDPA amended the provisions of 28 U.S.C. § 2254 generally to require that in considering habeas petitions, federal courts give deference to state court adjudications of a petitioner's claims.

*Certificate of Appealability.*

A certificate of appealability (COA) must be granted before we may review the merits of a habeas appeal.  28 U.S.C. § 2253(c)(1).  Section 2253(c)(2) provides that a COA will issue "only if the applicant has made a substantial showing of the denial of a

8

constitutional right." In *Slack v. McDaniel*, 529 U.S. 473, 484 (2004), the Court said this standard requires "a demonstration that . . . reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

AEDPA's deferential treatment of state court decisions must be incorporated into our consideration of a habeas petitioner's request for COA. *Dockins v. Hines*, 374 F.3d 935, 937 (10th Cir. 2004). Therefore, we may grant a COA on a claim that was adjudicated by the state court only if the appellant makes the requisite showing under § 2253(c)(2) that the propriety of the state court's decision conflicts with clearly established federal law or was the result of an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1)-(2).

*Merits Review under 28 U.S.C. § 2254(d).*

In reviewing the denial of a petition for writ of habeas corpus on the merits, we are subject to two different modes of analysis. If the constitutional claim was not heard on the merits by the state court and the federal district court made its own determination in the first instance, we review the district court's conclusions of law *de novo* and its findings of fact, if any, for clear error. *LaFevers v. Gibson*, 182 F.3d 705, 711 (10th Cir. 1999). But when reviewing the merits of a claim already decided by the state courts, we are bound to deny relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

9

Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* (quoting 28 U.S.C. §§ 2254(d)(1)-(2)). A state court decision is

> 'contrary to, or involves an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' if: (1) the state court decision is in square conflict with Supreme Court precedent which is controlling on law and fact or (2) if its decision rests upon an objectively unreasonable application of Supreme Court precedent to new facts. Quite simply, the 'AEDPA increases the deference to be paid by the federal courts to the state court's factual findings and legal determinations.'

*Id.* at 711 (quoting *Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997)).

Under any application of the law, this court does not stand to correct errors of state law and is bound, in the absence of any violation or misapplication of clearly established federal law, by a state court's interpretation of its own law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

III.

Discussion.

Given the procedural history of this case and the impact on petitioner's sentence of the treatment of his 1995 juvenile adjudication as a "person," rather than "nonperson" felony, we concur Petitioner's challenge to the constitutionality of the state court's actions deserved encouragement to proceed and now issue a COA to address that specific question on its merits. We decline to issue a COA on the other issues raised in Hobbs's Petition.

10

The standard of review to apply to this question on appeal is mixed under

*LaFevers*, in that Hobbs's generalized Sixth and Fourteenth Amendment constitutional

challenge[3] to the sentencing judge's criminal history determination was considered and

rejected by the Kansas state courts, while the specific propriety of the sentencing court's

actions under *Shepard* was decided in the first instance by the district court below. Given

the outcome of this case and the fact that the district court addressed *Shepard*

notwithstanding Hobbs's purported failure to exhaust under § 2254(b)(2), we do the

same. We consider Hobbs's arguments premised on *Shepard* and related Supreme Court

cases first under a *de novo* standard in accordance with *LaFevers*, and then consider the

remaining arguments raised first in the Kansas state courts thereafter under § 2254(d).

---

[3] As Appellees correctly point out, the only explicit mention of the United States Constitution occurred on page 46 of Hobbs's direct appeal brief to the Kansas Supreme Court, and only by way of comparison in the context of making a generalized due process argument that the sentencing court's actions denied him his rights under the Kansas Constitution to "demand the nature and cause of the action" against him. Hobbs argued the Kansas Bill of Rights included similar language to that of the Sixth Amendment, extending to an accused criminal defendant "the right 'to be informed of the nature and cause of the accusation.'" (DOA Br. at 46, citing *State v. Hall*, 793 P.2d 737 (Kan. 1990)). Hobbs also cited *State v. Larson*, 958 P.2d 1154 (Kan. 1998), and *State v. Gould*, 23 P.3d 801 (Kan. 2001), for the proposition that a defendant "cannot be convicted of a crime greater than that with which he is charged." *Id.* at 47. Both *Larson* and *Gould* apply Sixth Amendment federal due process concepts to the Kansas Sentencing Guidelines.

11

A.

*The sentencing court's sentence calculation did not offend <u>Shepard</u> or related Supreme Court precedent.*

For the first time on habeas review, Hobbs argued the state court's actions in looking beyond the 1995 juvenile case Journal Entry to declare its reference to a "nonperson" felony a clerical error violated his due process rights under *Shepard v. United States*, 544 U.S. 13 (2005). *See* Pet. for Writ of Habeas Corpus, Civ. Action No. 06-3133, 35. On appeal, Hobbs relies further on the Supreme Court's decision in *Taylor v. United States*, 495 U.S. 575 (1990), which informed the Supreme Court's decision in *Shepard*.

At issue in both *Shepard* and *Taylor* was the limit of a sentencing court's inquiry into the nature of prior state court generic burglary convictions in determining whether those convictions could be deemed "violent" felonies for purpose of federal sentence enhancement under the Armed Career Criminal Act (ACCA). Describing its holding in *Taylor*, the Court in *Shepard* stated "the ACCA generally prohibits the later court from delving into particular facts disclosed by the record of conviction, thus leaving the court normally to 'look only to the fact of conviction and the statutory definition of the prior offense.'" 544 U.S. at 17 (quoting *Taylor*). In *Shepard* the Court looked to the circumstances under which the rule in *Taylor*, which arose in the context of convictions on a jury verdict, could be applied also to convictions on pleas. *Id.* at 19. It held the

> enquiry under the ACCA to determine whether a plea of guilty to burglary
> defined by a nongeneric statute necessarily admitted elements of the generic

12

offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.

*Id.* at 26. Based on our review of the law and our own cases interpreting *Shepard*, we agree with the district court not only that the Kansas courts' actions in upholding the state sentencing judge are not implicated by *Shepard* or *Taylor*, but also that, even if they were, the sentencing judge's actions would not have offended them.

We find our decision in *United States v. Christensen*, 456 F.3d 1205 (10th Cir. 2006), dispositive on both counts. In *Christensen* we clarified that *Shepard* and *Taylor* were not constitutional decisions and decided only matters of federal statutory interpretation under the ACCA. *Id.* at 1206-07. *Shepard* took pains, for example, to limit its holding that federal courts are constrained to look only at certain court documents in determining whether a prior state burglary conviction was a "violent" crime to the language of the ACCA itself, and not the constitution. *Shepard*, 544 U.S. at 25 (invoking the rule of reading statutes to avoid serious risks of unconstitutionality). Absent additional authority from the Supreme Court, then, neither *Taylor* nor *Shepard* provides a constitutional basis for challenging the Kansas courts' actions in this case.

Moreover, even if we were to interpret *Shepard's* holding as articulating a new constitutionally-based rule constraining sentencing courts from looking beyond charging documents and plea colloquies for sentence enhancement purposes, that rule would not apply retroactively to Hobbs, whose conviction and sentence became final in late 2003 –

13

more than a year before *Shepard* was decided. *See Christensen*, 456 F.3d at 1207. And finally, we agree that the Court's holdings in *Taylor* and *Shepard* – even if they were determined to state a principle of constitutional law rather than statutory interpretation and were applicable to the Kansas courts' actions in approving the enhancement of Hobbs's sentence as a Category B, rather than C, offender – were not clearly offended by the sentencing court's actions in finding the "nonperson" felony reference in the 1995 Complaint and Journal Entry to have been clerical error. Even without reference to the 1998 PSR of which it took judicial notice under Kan. Stat. Ann. § 21-4714(f), the court compared the facts charged in the Complaint and admitted in the Journal Entry to the applicable burglary statute language to find Hobbs plead to a "person," rather than "nonperson," felony within the import of both Supreme Court cases.

Reviewing Hobbs's claim for habeas relief premised on *Shepard* and *Taylor* de novo, we affirm the district court and deny the Petition on its merits.

B.

*The state courts' approval of the sentencing court's actions in treating the 1995 adjudication as a "person" felony did not otherwise run afoul of clearly established Federal law and was not an "unreasonable" determination of the facts in light of the evidence presented under § 2254(d)(1) & (2).*

In its decision on direct appeal, the Kansas Supreme Court found Hobbs's Kansas state – and by implication, Sixth Amendment due process – arguments "without merit." (Aplt. App. 41.) Rather than address the arguments directly, however, the Court determined that the sentencing judge had been authorized by operation of Kan. Stat. Ann.

14

§ 27-4715(c) to take judicial notice of the 1998 PSR prepared in connection with his drug conviction because Hobbs had failed, in that case, to object to it. (*Id.*)

Under § 2254(d)(1), we are bound to deny relief on Hobbs's arguments premised on *Hall, Larson*, and *Gould* unless the Kansas court's decision is in "square conflict" with Supreme Court precedent or if it rests upon an "objectively unreasonable application of Supreme Court precedent to new facts." *LaFevers*, 182 F.3d at 711. Hobbs's only specific arguments that the state courts' actions run contrary to established Supreme Court precedent rely on *Shepard* and *Taylor*, which we have already resolved against him as stated above.

Based on our independent review of clearly established federal law, we cannot conclude the Kansas Supreme Court's reliance on the judicial notice provisions of Kan. Stat. Ann. § 27-4715 to reject Hobbs's arguments premised on *Hall*, *Larson* and *Gould* offended any established principle of federal law. Under habitual offender sentencing schemes such as Kansas's, the repeat offender is not being "accused" or convicted "again" for his prior offenses; instead, his prior convictions establish a sentencing classification for his current conviction, which is the only one being punished. *See State v. Landon*, 900 P.2d 254, 256 (Kan. Ct. App. 1995). Having failed to persuade us the sentencing court's actions ran afoul of *Taylor* or *Shepard*, the Kansas courts' approval of the sentencing judge's actions in declaring Hobbs's 1995 adjudication a "person" rather than "nonperson" felony is contrary to no other identified or identifiable Supreme Court precedent. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (prior convictions are

15

exempt from rule that facts sufficient to raise the limit of a possible criminal sentence must be found by a jury absent a waiver by defendant).

Hobbs devotes the majority of his argument under § 2254(d) to the assertion that the treatment of his 1995 juvenile adjudication as a "person" felony constituted an "unreasonable determination of the facts in light of the evidence presented in the State Court proceeding" under § 2254(d)(2). Hobbs's argument is that, when he objected to the characterization of his 1995 conviction as a "person" felony in his 2001 criminal history report, the burden shifted to the State to establish the fact of that conviction. Because the State failed to come forward with any evidence to rebut the "nonperson" designation in the juvenile court's 1995 Journal Entry, Hobbs concludes the sentencing court's actions in judicially noticing that the offense was actually a "person" felony and ascribing "clerical error" to the Journal Entry constituted an unreasonable finding of fact based on the "evidence" presented under § 2254(d)(2).

At oral argument counsel for Hobbs was pressed to relate this alleged error to a specific Supreme Court case or established federal constitutional right, the touchstone of any remedy under § 2254. Again he asserted the sentencing court's actions violated his fundamental rights to "due process," which, besides his reliance on *Shepard* and *Taylor*, he supports in his briefing with citations to *Beem v. McKune*, 317 F.3d 1175, 1187-96 (10th Cir. 2003)(McKay, J., dissenting) as well as the *Hall*, *Larson* and *Gould* trilogy already rejected above.

16

*Beem*, a decision in which this court, *en banc*, denied habeas relief to Kansas state prisoners who had been convicted of rape of a child but resentenced in accordance with an intervening Kansas Supreme Court case to lesser terms that conformed to convictions for aggravated incest. 317 F.3d at 1184-85. Because the "effect" of the state court's actions left the underlying convictions for general sex crimes intact and imposed sentences less than that authorized by the jury's guilty verdict, a plurality of the court held petitioners' due process rights under *Apprendi* were not violated, and denied habeas corpus relief. *Id.* Judge McKay dissented, arguing petitioners' sentencing on offenses that were never charged offended their procedural due process rights under *Cole v. Arkansas*, 333 U.S. 196 (1948) (the due process under the Sixth Amendment requires notice of specific charge and chance to be heard in a trial on issues raised by that charge).

Neither *Beem* nor *Cole* have any application here. Hobbs was convicted and sentenced on the offense charged (vehicular homicide) and asserts no defect in the notice received or his chance to be heard at trial on the issues raised by that charge. Hobbs's assertion that the sentencing court's treatment of his 1995 "nonperson" felony as a "person" felony to enhance his sentence "convict[s] him of a crime *greater* than that with which he was charged" (Aplt. Br. at 35 (citing *Hall*, *Larson* and *Gould*)) is similarly unavailing. As previously stated, Hobbs misunderstands the function of his burglary conviction under the Kansas Sentencing Guidelines. Neither his current conviction nor his enhanced sentence "punishes" him again for a prior crime. Instead, the prior conviction merely led to an enhanced sentence for a new crime.

17

Moreover, we note Hobbs's reliance on § 2254(d)(2) to characterize the sentencing court's clerical error determination as an unreasonable finding of fact given the evidence presented is fundamentally misplaced. Section 2254(d)(2) is directed at the evidentiary sufficiency of a petitioner's state court *conviction* under a standard where a presumption of correctness applies to all findings of fact. § 2254(e)(1). The relevant question, under a § 2254(d)(2) review, "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). Hobbs's argument that the determination his 1995 juvenile adjudication was a "person" rather than "nonperson" felony was "unreasonable" conflates an argument regarding the propriety of the sentencing court's actions in making a legal determination regarding a defendant's criminal history with the standard for evaluating the evidentiary sufficiency of a conviction under § 2254(d)(2). While the sentencing judge's determination in this case included reviewing the 1995 case Complaint and Journal Entry, consulting the statutory elements of the crime of burglary, and giving effect, under Kan. Stat. Ann. § 21-4714(f), to Hobbs's failure to object to that same criminal history in his 1998 PSR, the determination was a legal one reviewable after AEDPA only for reasonableness and consistency with "clearly established Federal law" under § 2254(d)(1). *See State v. Presha*, 8 P.3d 14, 16 (Kan. Ct. App. 2000) (what constitutes a prior conviction for purposes of determining a defendant's criminal history under the Kansas Sentencing

18

Guidelines Act, Kan. Stat. Ann. § 21-4701 *et seq.* is a question of law). It was not reviewable as an evidentiary challenge under 2254(d)(2).

Finally, we note that even if the sentencing judge's finding of clerical error is viewed as a factual finding on evidence presented in accordance with Kan. Stat. Ann. § 21-4715(c), that finding is presumed correct in habeas proceedings under § 2254(e)(1). It is Hobbs who has the burden of rebutting that presumption of correctness by a preponderance of the evidence, *see id.*, and the record before us belies any such conclusion.

IV.

Conclusion.

We agree with the federal district court that Mr. Hobbs has failed to establish that the state sentencing court's treatment of his 1995 juvenile adjudication as a "person" rather than a "nonperson" felony for purposes of enhancing his sentence under the Kansas Sentencing Guidelines constituted a denial of his rights under the United States Constitution. Accordingly, we AFFIRM.

Entered for the Court.

John L. Kane
Senior U.S. District Judge

19