No. 48,493

STATE OF KANSAS, *Appellee,* v. WARREN SMITH, *Appellant.*

(574 P.2d 161)

Opinion filed January 21, 1978.

*Hugh R. McCullough,* of Topeka, argued the cause and was on the brief for the appellant.

*Donald P. Morrison,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

HOLMES, J.: This appeal was recently before this court and was dismissed for apparent lack of jurisdiction in an opinion filed November 5, 1977.

At the time of the original hearing and decision in this case, the record supplied by counsel affirmatively reflected the appeal was filed out of time and that this court had no jurisdiction. Subsequent to our original opinion the defendant was granted leave to file an amended record which correctly set forth the facts and which now indicates the appeal had been taken in time. Therefore, our order of November 5, 1977, dismissing the appeal is set aside and we will proceed to consider the matter on the merits.

This is a direct appeal in a criminal action in which defendant-appellant was convicted by a jury of aggravated robbery. (K.S.A. 21-3427.)

The sole question raised by defendant is whether his right to due process of law under the Fourteenth Amendment of the U.S. Constitution was denied when the trial court allowed the prosecutor to impeach the defendant through cross-examination on defendant's post-arrest, pre-trial silence.

Clyde E. Linder, a cab driver for the Yellow Cab Company in Topeka, Kansas, was dispatched at approximately 3:00 a.m., December 20, 1973, to 1005 Wear Circle, Topeka. At that address the defendant, Warren Smith, entered the front seat of the cab, at which time Linder observed his face and clothing, and a companion got into the back seat. Linder drove to 15th and Madison, Topeka, where he stopped at defendant's direction. Defendant stuck a knife toward Linder and stated, "I want your money." Linder gave him $12.00 in one-dollar bills. Linder was successful in fleeing the cab but in doing so obtained a slight cut in the stomach area from the object defendant was holding. Within a matter of two or three minutes, Linder called the Topeka Police Department and described defendant and his companion and furnished details of the crime. This information was immediately dispatched by radio to patrol units in the area. Linder then went to the Topeka Police Station where a short time later he observed defendant and made a positive identification based upon his facial appearance and clothing.

Officer Morales of the Topeka Police Department saw defendant shortly after the message had been dispatched over the police radio. Defendant and a companion were crossing a street at 14th and Quincy near the scene of the crime and, as they met the descriptions which had been dispatched, the officer directed defendant and his companion to stop.

Gary Dale Anderson of the Topeka Police Department arrived and observed defendant and his companion, who both met the descriptions that had been broadcast over the police radio, observed blood on the hand of defendant and that he was wearing waffle stomper type boots.

It was stipulated that there was fresh snow on the ground.

Three additional police officers arrived at the scene of the crime and observed two sets of footprints in the snow leading away from the scene. They followed the tracks and they led directly to the point where defendant and his companion had been apprehended. Along the route they found seven blood-stained one-dollar bills and a billfold with a receipt in it made out to Andy Smith. Andy Smith turned out to be the companion and younger brother of the defendant. One set of tracks was made by waffle stomper type boots similar to those of the defendant and the other

set of tracks matched the cowboy boots worn by Andy Smith. Both sets of tracks proceeded together and it was apparent that the persons who made them had been together continuously from the scene of the crime to the point where defendant and his brother were stopped.

Pam West testified she is the sister of the defendant, lives at 1005 Wear Circle, Topeka, and her brother visits her on an unannounced basis.

Keith Hobart, a superintendant at the Yellow Cab Company, determined from company records that at 3:03 a.m., December 20, 1973, Mr. Linder was dispatched to pick up a fare at 1005 Wear Circle, Topeka.

There was additional substantive evidence presented by the State.

The defendant took the witness stand in his defense and testified that he attended a party that evening at Frank Ingrem's house, 2138 E. 12th Street, Topeka. At approximately 2:45 a.m. he decided to go visit one Randy Elliott just to talk. Randy Elliott lived on West 10th Street in Topeka, and defendant did not call before starting to walk over to see Mr. Elliott. Defendant said he ran into his brother at 13th and Monroe, on his way to Randy Elliott's house. (This was not on a logical route to West 10th Street from his alleged departure point.) Defendant admitted having blood on his hands and dropping some one-dollar bills which he received from his brother.

After defendant's testimony on direct examination, the court took a recess to consider a proffer by the state prosecutor of questions that the state was considering asking the defendant on cross-examination. The court upon the authority of *State v. Jackson,* 201 Kan. 795, 443 P.2d 279, *cert. den.* 394 U.S. 908, 22 L.Ed.2d 219, 89 S.Ct. 1019, overruled the defendant's objection as to the proffered inquiry.

The trial resumed and on cross-examination, Mr. Morrison, assistant district attorney, asked the defendant:

"Q. In regards to this business about going over to Randy Elliott's house that night, when was it after you were apprehended on the 20th that you told the police this entire detail?

"A. I didn't.

"Q. Okay. Never did?

"A. No.

"Q. Not on the 20th?

"A. No.
"Q. Not on the 21st?
"A. No.
"Q. Never told them?
"A. No.
"Mr. Morrison: Thank you. No further questions, Your Honor."

On re-direct examination defendant's counsel asked:

"Q. Would you care to explain why you didn't tell the police?
"A. Yes, because at the time when they called us and they booked us in I asked them what are we charged with and they said with aggravated robbery. And they gave us our rights, so I said and I figured it would be best just to remain silent until we got our counsel."

No further questions as to defendant's post-arrest silence were asked by either counsel and no comment on the same was made by the prosecution in closing argument.

The trial of this action took place in 1974 prior to the decision in *Doyle v. Ohio,* 426 U.S. 610, 49 L.Ed.2d 91, 96 S.Ct. 2240, and our decision in *State v. Heath,* 222 Kan. 50, 563 P.2d 418.

"The use for impeachment purposes of a defendant's silence at the time of his arrest and after receiving *Miranda* warnings violates the due process clause of the Fourteenth Amendment to the United States Constitution." *State v. Jordan,* 223 Kan. 197, Syl. 1, 574 P.2d 194.

"Where a prosecutor on cross-examination improperly asks a defendant why he did not tell his story to a police officer following his arrest and after receiving *Miranda* warnings, a new trial is not required if the court finds from the totality of circumstances that such conduct constituted harmless error beyond a reasonable doubt." *State v. Jordan,* supra, Syl. 2.

Although the questioning of defendant by the prosecutor as to defendant's post-arrest silence was improper, considering the "totality of circumstances" in this case, we find that it constituted harmless error beyond a reasonable doubt.

The judgment is affirmed.