(642 P.2d 136)
No. 53,409

STATE OF KANSAS, *Appellee*, v. DANNY L. BLEVINS, *Appellant*.
Petition for review denied May 21, 1982.

Opinion filed March 25, 1982.

*Frank A. Carrano,* legal intern, and *Max Rowinsky,* of Topeka, for the appellant.

*Randy M. Hendershot,* assistant district attorney, *Gene M. Olander,* district attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before SPENCER, P.J., REES and MEYER, JJ.

SPENCER, J.: Following trial to a jury, defendant was adjudged guilty of one count of aggravated assault (K.S.A. 21-3410 [Ensley]) and one count of simple battery (21-3412).

Defendant does not challenge the sufficiency of the evidence presented at trial, but contends it was error for the trial court to allow the prosecution to inquire as to whether he had testified at the preliminary hearing. This is the sole issue on appeal.

The conviction stems from an armed altercation with one Michael Sipes. Also present but not directly involved was one Randy Chrisman. At trial defendant's sister was asked what she had told the police when they came to her house the evening of the day the events took place. Her answer was:

"Well, I didn't tell them anything, really. Danny, evidently, was protecting Mike by saying it was black people. So I just kind of looked at Danny. I said, 'Yeah, it was black people.' I figured if Danny was going to be in trouble for something, then I needed to keep my mouth shut until Danny had a lawyer."

Defendant was the final witness to take the stand and testified that he acted in self-defense. Otherwise, the major portion of his testimony was an attempt to refute that of Sipes and Chrisman regarding the exchange of gunfire.

On cross-examination, the prosecution questioned defendant regarding the whereabouts of the .22-caliber rifle defendant had used. In answer to questions directed by the prosecution, defendant responded he did not know the whereabouts of the rifle; he had initially thought the police had recovered it; and he was not at the time concerned with the evidentiary value of the rifle as he "didn't even want to see [Sipes] get in any trouble." The following question and answer were then recorded:

"Q. Is that why you told the police it was blacks that shot at you?
"A. Yes, sir. I knew [Sipes] would bring my billfold back."

Toward the close of cross-examination, defendant again admitted he had initially told the police it was blacks who had been shooting at him. This admittedly false statement was not obtained from defendant subsequent to arrest, but was the result of a conversation with the police conducted pursuant to their initial investigation of the shooting shortly after its occurrence. On redirect examination, defense counsel elicited the following as having taken place immediately after defendant's arrest:

"Q. When you were down to the police station, you had an opportunity to talk to Officer Padilla who was sitting here?
"A. Yes, I did.
"Q. Did he ask you to make a statement?
"A. Not at the police station.
"Q. Did you talk to Padilla that evening?
"A. Yes, I did.
"Q. Did he ask you to make a statement?
"A. Yes, he did.
"Q. And what did you tell him?
"A. I asked him, 'Well, I don't have no legal counsel, don't have a lawyer. I don't even know why I am here. For some legal advice, would you tell me what I should do?'
"Q. You asked Officer Padilla for some advice?
"A. And he said, 'I can't give you that advice that you need.' I said, 'Would you make a statement if you were in my shoes?' He said, 'Between me and you, would I make a statement?' I said, 'Yes.' He said, 'No.' I says, 'Okay. I guess that's all I need to know.' He says, 'So you won't make a statement?' I said, 'Not without legal counsel.'
"Q. And you waited for an attorney?
"A. And I waited for an attorney."

On recross-examination, the prosecutor developed the following testimony, containing the complained-of question assigned error by defendant:

"Q. But what contact you had with him [Officer Padilla] you figured that he was being fair?

"A. Why I just stated one thing. I said, 'They got the wrong man here.' That's what I told Mr. Padilla, but that wasn't a statement because I told him I wasn't going to give a statement.

"Q. *And you didn't testify at the preliminary hearing, did you?*

"MR. ROWINSKY: Judge, I object. He has no obligation to testify and bring forth testimony at any proceeding.

"THE COURT: Well, overruled.

"MR. HENDERSHOT: State agrees. I'm just asking—(Interrupted)

"A. No, I didn't testify at the preliminary hearing.

"Q. (BY MR. HENDERSHOT) Okay. You know you have the legal right not to testify at that preliminary hearing. Mr. Rowinsky told you that?

"A. Yes." (Emphasis added.)

On further redirect examination, the following occurred:

"Q. Danny, do you remember the preliminary hearing?

"A. Yes.

"Q. Do you remember how many times you asked me if you could testify?

"A. Uh-huh.

"Q. How many?

"A. Three, four.

"Q. What did I tell you?

"A. To wait."

In response to defendant's assertion of error, the State argues defendant's answer to the question of whether he had testified at the preliminary hearing was volunteered as no question had been asked at the time of the response; and that defendant's objection was properly overruled and never renewed in proper form. We find no merit to these assertions for clearly defendant's counsel did object, and just as clearly that objection was based upon constitutional grounds. Obviously, defendant's answer was in response to the question and was given when he heard the court overrule the objection.

The State contends that even if defendant's answer was a direct response to its inquiry and not merely a volunteered statement, the situation did not in fact constitute error, but if it was error it was harmless beyond a reasonable doubt. It is argued defendant and his sister had both admitted having made false statements to the police the night of the incident, and the right to remain silent is not a shield for perjury once defendant takes the stand; and furthermore, the constitution does not forbid all use of prior silence for impeachment purposes. In this connection, the State relies on *Jenkins v. Anderson,* 447 U.S. 231, 65 L.Ed.2d 86, 100

S.Ct. 2124 (1980), which dealt with the use of an accused's pre-arrest silence in not reporting with respect to a crime for which he was subsequently arrested and prosecuted. We find no fault with this argument but we are not here concerned with the question of defendant's pre-arrest silence, nor is it clear as to how his failure to testify at the preliminary hearing might have been a shield for perjury. Defendant admitted he first told the police black people were involved, and it is clear from this record that inquiry as to whether he testified at the preliminary hearing was not to show that he had given inconsistent statements or had perjured himself, but was intended primarily to discredit his plea of self-defense. See *State v. Wood,* 230 Kan. 477, 638 P.2d 908 (1982); *State v. Singleton,* 223 Kan. 559, 575 P.2d 540 (1978).

It is also argued that inasmuch as defendant elected to testify in his own behalf, he was subject to being examined as any other witness. In making this assertion the State relies on *Raffel v. United States,* 271 U.S. 494, 70 L.Ed. 1054, 46 S.Ct. 566 (1926), wherein it was stated:

"The safeguards against self-incrimination are for the benefit of those who do not wish to become witnesses in their own behalf and not for those who do. There is a sound policy in requiring the accused who offers himself as a witness to do so without reservation, as does any other witness." 271 U.S. at 499.

and which held in substance that an accused becoming a witness in his own behalf on a second trial of the case may be cross-examined as to why he did not become a witness at the first trial.

In *State v. Bly,* 215 Kan. 168, 523 P.2d 397 (1974), our Supreme Court considered a similar issue and, relying at least in part on *Raffel,* held among other things that when a defendant testifies he may be impeached like any other witness.

Following the decision in *Bly* however, the United States Supreme Court rendered its decision in *Doyle v. Ohio,* 426 U.S. 610, 49 L.Ed.2d 91, 96 S.Ct. 2240 (1976), and said in effect that use for impeachment purposes of a defendant's post-arrest silence, after receiving the *Miranda* warnings, violates the due process clause of the Fourteenth Amendment to the United States Constitution.

*Doyle* was considered by the Kansas Supreme Court in *State v. Mims,* 220 Kan. 726, 556 P.2d 387 (1976), wherein it was held:

"The use for impeachment purposes of a defendant's silence at the time of his arrest and after receiving *Miranda* warnings, violates the due process clause of the Fourteenth Amendment to the United States Constitution." Syl. ¶ 1.

"Before a federal constitutional error in a criminal action can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Syl. ¶ 4.

In doing so, the court expressly overruled conflicting portions of the opinion in *Bly.*

Our conclusion is that the authority of *Raffel* is no longer recognized in this state as applicable to circumstances here related. We hold it was error to permit inquiry at trial as to whether defendant had testified at the preliminary hearing. Having so decided, the question remains as to whether it was harmless error.

As related, defense counsel first elicited testimony which revealed to the jury that defendant had elected to stand on his right to remain silent and refused to make a statement to the police. In response to a question directed by the prosecution, defendant again stated without objection that he refused to make a statement to the police. Immediately following the complained-of question and answer regarding defendant's silence at preliminary, defense counsel took pains to explain to the jury that defendant's silence at the preliminary hearing was upon advice of counsel and not defendant's reluctance to testify.

The prejudicial inference normally created where the State initially raises the point of post-*Miranda* silence was not raised in the same degree as in other cases decided by our Supreme Court and by this court. See *State v. Clark,* 223 Kan. 83, 574 P.2d 174 (1977); *State v. Fisher,* 222 Kan. 76, 563 P.2d 1012 (1977); *State v. Heath,* 222 Kan. 50, 563 P.2d 418 (1977); *State v. Mims,* 220 Kan. 726; *State v. Satterfield,* 3 Kan. App. 2d 212, 592 P.2d 135, *rev. denied* 226 Kan. 793 (1979).

Here, defendant's own counsel first revealed to the jury that defendant had elected to maintain post-*Miranda* silence. The revelation that defendant also failed to testify at preliminary could hardly be any more damaging, especially where it was made clear to the jury that defendant failed to testify on advice of counsel and not due to lack of desire to do so. Under these circumstances, it can reasonably be stated that the complained-of error was harmless beyond a reasonable doubt. See *State v. Smith,* 223 Kan. 294, 574 P.2d 161 (1978); *State v. Jordan,* 223 Kan. 197, 574 P.2d 194 (1977).

Affirmed.