**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 27 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

STEVEN D. BEEM,

        Petitioner - Appellant,

v.

DAVID R. MCKUNE, Warden,
Lansing Correctional Facility; CARLA
STOVALL, Kansas Attorney General,

        Respondents - Appellees.

No. 00-3224

---

DONALD HENSON, JR.,

        Petitioner - Appellant,

v.

DAVID R. MCKUNE, Warden,
Lansing Correctional Facility; CARLA
STOVALL, Kansas Attorney General,

        Respondents - Appellees.

No. 00-3249

---

**APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS
(D. Ct. Nos.   98-CV-3158-DES and 98-CV-3246-DES)**

---

Michael S. Holland (Michael S. Holland II, with him on the brief), Holland and
Holland, Russell, Kansas, for Petitioners-Appellants.

Kristafer R. Ailslieger, Assistant Attorney General, Criminal Litigation Division, Topeka, Kansas, for Respondents-Appellees.

---

Before **TACHA** , Chief Judge,   **McKAY, SEYMOUR, EBEL, KELLY, HENRY, LUCERO, MURPHY, HARTZ**  , and **O'BRIEN** , Circuit Judges.  [*]

---

**TACHA** , Chief Circuit Judge.

---

Petitioners-appellants Steven D. Beem and Donald H. Henson, Jr. sought habeas corpus relief in federal district court, 28 U.S.C. § 2254, arguing that the Kansas state courts violated their federal constitutional rights by sentencing them for aggravated incest – a crime for which they had never been charged, tried, or convicted.  The district court denied the petitions for habeas corpus and the petitioners' requests for certificates of appealability.  Both petitioners appealed, and their cases were consolidated for our review.  A divided panel of this court decided in petitioners' favor, vacating their convictions and sentences.  We now consider the cases as an   en banc court. We exercise jurisdiction pursuant to    28 U.S.C. §§ 1291 and 2253, GRANT petitioners' requests for certificates of appealability, and AFFIRM the district court's denial of the habeas petitions.

I.  Background

---

[*]Judge Briscoe heard oral argument, but subsequently recused.

-2-

Beem was charged in the District Court of Reno County, Kansas, with one count of indecent liberties with a child, Kan. Stat. Ann. § 21-3503. In 1989, a jury found him guilty, and the court sentenced him to 15 to 60 years imprisonment. [1] Beem appealed his conviction, and the Kansas Court of Appeals affirmed in 1991. Beem later filed a state habeas corpus petition, Kan. Stat. Ann. § 60-1507, arguing that because he was related to his victim, he should have been charged with aggravated incest rather than indecent liberties with a child pursuant to a state law rule announced in State v. Williams, 829 P.2d 892 (Kan. 1992). [2] In 1995, the trial court vacated Beem's sentence for indecent liberties with a child and ordered resentencing, in accordance with the Kansas Supreme Court's decision in Carmichael v. State, 872 P.2d 240 (Kan. 1994). [3] At resentencing, the court imposed a sentence of 9 to 30 years, which conforms to the sentencing range for aggravated incest. Beem appealed the new sentence, arguing that the

---

[1] Beem was also charged and convicted of one count of aggravated assault, Kan. Stat. Ann. § 21-3410, but his conviction and sentence for this crime are not at issue in this appeal.

[2] Under Williams, where a defendant is related to his victim, the State must charge him with the more "specific" offense of aggravated incest rather than the more "general" offense of indecent liberties with a child. 829 P.2d at 897. The Williams rule is considered at length in section II(C)(1), infra.

[3] Under Carmichael, where a defendant suffered a Williams violation but fails to raise the issue until after he has been tried and convicted, the proper remedy is to remand for resentencing in accordance with the allowable penalty range for aggravated incest. 872 P.2d at 247. We consider the Carmichael remedy in section II(C)(1), infra.

court had violated his rights to due process and to a jury trial. The Kansas Court of Appeals affirmed, and the Kansas Supreme Court denied review.

Henson was charged in the District Court of Miami County, Kansas, with three counts of rape, Kan. Stat. Ann. § 21-3502. In 1992, a jury found him guilty on all three counts, and the court sentenced him to three consecutive sentences of 7 to 20 years each. Henson appealed, and the Kansas Court of Appeals held that, because the victim was his step-daughter, he should have been charged with aggravated incest – rather than rape – under Williams. Following Carmichael, the court vacated his sentence and remanded for resentencing in accordance with the penalty range for aggravated incest. The district court reduced the original sentences to 3 to 7 years each.

Beem and Henson filed petitions for writs of habeas corpus with the United States District Court for the District of Kansas. Petitioners challenged the constitutionality of the Carmichael remedy, arguing that it amounts to imprisonment for aggravated incest – an offense for which neither was ever charged, tried, or convicted – in violation of the Sixth Amendment's jury-trial guarantee and the Fourteenth Amendment's Due Process Clause. The district court denied the habeas petitions and the petitioners' requests for certificates of

-4-

appealability. [4] On appeal, a divided panel of this court held that the Carmichael remedy violated petitioners' constitutional rights, vacated their convictions and sentences, and noted that double jeopardy did not bar new trials on the charge of aggravated incest. We granted the State's request for en banc rehearing.

## II. Discussion

## A. Certificates of Appealability

Petitioners ask us to grant certificates of appealability to appeal the district court's denial of their habeas petitions. This court will only grant a certificate of appealability to a petitioner who makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because the district court "has rejected the constitutional claims on the merits, . . . petitioner[s] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

A divided panel of this court originally granted petitioners habeas relief, and we subsequently granted the State's request for en banc review. These developments satisfy us that reasonable jurists would find the district court's

---

[4] Although Henson had not exhausted his remedies in state court before filing his federal habeas petition, the district court excused the exhaustion requirement because the state courts' resolution of Beem's case made it futile for Henson to seek relief in state court.

assessment of the petitions' constitutional claims "debatable," and we therefore grant petitioners certificates of appealability. See id. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 2253(a).

B. Standard of Review

In evaluating the district court's denial of a habeas corpus petition, we review legal conclusions de novo and factual findings for clear error. See Davis v. Executive Dir. of Dep't of Corrs., 100 F.3d 750, 756 (10th Cir. 1996). To obtain habeas relief, petitioners must establish that the state court decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . [were] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

C. Analysis of the Constitutional Claim

*1. The* Williams *Rule and the* Carmichael *Remedy*

The appeals before us stem from the Kansas courts' application of a state law rule announced in State v. Williams, 829 P.2d 892 (Kan. 1992), and Carmichael v. State, 872 P.2d 240 (Kan. 1994). In Williams, the Kansas Supreme Court considered the interplay between two offenses: "Indecent liberties with a child" under Kan. Stat. Ann. § 21-3503 and "Aggravated incest" under Kan. Stat. Ann. § 21-3603. Id. at 894. In Williams, the State had charged the defendant

with taking indecent liberties with his 14-year-old step-granddaughter. Id. at 893. Before trial, the defendant moved to dismiss the criminal complaint. Id. at 894. He argued that when a defendant is related to the alleged victim, as set forth in the aggravated incest statute, Kan. Stat. Ann. § 21-3603, " the State must charge a defendant with aggravated incest rather than indecent liberties with a child." Id.

The Kansas Supreme Court agreed. Id. at 897. Although the two statutes both prohibited the alleged conduct, aggravated incest had a kinship requirement not present in indecent liberties with a child. Id. at 894, 897. [5] Specifically, aggravated incest requires that the victim be "known to the offender to be related to the offender . . . ." Kan. Stat. Ann. § 21-3603(1). Because of this additional requirement, the court concluded that aggravated incest was a "specific" offense,

---

[5] When Williams was decided, as well as at the time of petitioners' trials, Kansas defined aggravated incest as "marriage to or engaging in any prohibited act . . . with a person who is under 18 years of age and who is known to the offender to be related to the offender . . . ." Kan. Stat. Ann. § 21-3603(1). "Prohibited acts" under the statute included "[s]exual intercourse, sodomy or any unlawful sex act" and "any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender or both." Id. § 21-3603(2)(a)-(b). This definition of aggravated incest thus included acts also prohibited by the statutes prohibiting indecent liberties with a child, Kan. Stat. Ann. § 21-3503, and rape, Kan. Stat. Ann. § 21-3502. The Kansas Legislature has since altered the definition of aggravated incest to exclude acts that are covered by the statutes prohibiting rape and indecent liberties with a child. See 1993 Kan. Sess. Laws, ch. 253, § 15 (amending Kan. Stat. Ann. § 21-3603).

as compared to indecent liberties with a child, a more "general" offense.[6]  Id. at 897.  Under Kansas rules of statutory construction, "'a special statute prevails over a general statute unless it appears that the legislature intended to make the general act controlling.'"  Id. at 895 (citation omitted).  Accordingly, the court held that "where a defendant is related to the victim . . . the State may charge the defendant with aggravated incest for engaging in the acts prohibited [by the aggravated incest statute] but not with indecent liberties with a child."  Id. at 897.

In Carmichael v. State, the Kansas Supreme Court considered the appropriate remedy where the prosecution violated the Williams rule but the defendant raised the issue only after conviction and sentencing for rape. Carmichael, 872 P.2d 240, 242 (Kan. 1994).  The defendant argued that because he met the kinship element under the aggravated incest statute, Williams required that the court set aside his rape convictions.  Id. at 241-42.  The Kansas Court of Appeals had agreed, concluding that "'the judgment against [the defendant] for the offense of rape where the court was without jurisdiction to decide the issue is void.'"  Id. at 242.

The Kansas Supreme Court reversed.  Id. at 247.  The court held that the charging error did not deprive the trial court of jurisdiction and rejected the

_____

[6] "A statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is specific." Williams, 829 P.2d at 897 (citation omitted).

-8-

notion that Williams required it to vacate the defendant's underlying rape convictions. Id. at 243-44, 247. In other words, the court held that the defendant did not suffer illegal convictions. Rather, the court identified the harm as "the imposition of an erroneous sentence," basing its conclusion on the Kansas legislature's intent to impose a less severe punishment for identical conduct perpetrated by a person related to the victim. Id. at 244 (emphasis added). Accordingly, the court relied on its statutory authority to "correct an illegal sentence at any time," Kan. Stat. Ann. § 22-3504, and remanded the case with instructions "to vacate the sentence imposed for rape and resentence the petitioner for aggravated incest." Id. at 247.

### 2. Characterization of the Carmichael Remedy

According to petitioners, the Carmichael remedy amounts to a court finding them guilty of and sentencing them for aggravated incest – an offense for which they were not charged, tried, or convicted. A divided panel of this court accepted this characterization of the Carmichael remedy. We disagree.

Under Carmichael, where (1) the prosecution violated the Williams rule, but (2) the defendant failed to raise any objection until after conviction and sentencing, "the proper remedy is to vacate the sentence imposed for rape and resentence the petitioner for aggravated incest." Carmichael, 872 P.2d at 247. This language – "for aggravated incest" – creates some ambiguity in the

Carmichael remedy.  Resolution of this case requires us to consider whether the Carmichael remedy truly results in a sentence _for_ aggravated incest – which would require jury findings on all elements of that crime – or whether instead the remedy merely results in a reduced sentence _for_ the crime of conviction – rape or indecent liberties with a child[7] – albeit one that is determined by reference to the penalty range for aggravated incest.

Under petitioners' interpretation, the Carmichael remedy involves (1) vacating the sentence for the general sex crime and (2) imposing a sentence for aggravated incest without an underlying conviction for aggravated incest.  Under this construction, the court assumes the missing conviction, and petitioners argue that this assumption violates due process.  Alternatively construed, Carmichael is merely a sentence-reduction remedy.  Under this construction, the Carmichael remedy (1) leaves intact the conviction for the general sex crime and (2) reduces the sentence for the general sex crime by reference to the allowable penalty range for aggravated incest  .  A close analysis of Carmichael leads us to adopt the latter characterization.

First, in Carmichael, the Kansas Supreme Court did not disturb the defendant's underlying convictions for rape.  Id. at 241, 247 (rejecting

---

[7] We refer to rape and indecent liberties with a child generically as "general sex crimes" or "general sex offenses" in conducting our analysis.

-10-

defendant's request that the court set aside his jury convictions for rape). The court made clear that Williams did not call into question the validity of the rape convictions. Id. Rather, the court remedied what it deemed "an erroneous sentence" under Kansas law. Id. at 244 (emphasis added). Consistent with Carmichael, petitioners conceded at oral argument that their recorded convictions are rape and indecent liberties with a child – not aggravated incest.

Second, in fashioning its remedy, the Carmichael court relied on its statutory authority to "'correct an illegal sentence." Id. at 245 (citing Kan. Stat. Ann. § 22-3504). The Kansas Supreme Court apparently understood its holding to be a correction of "a sentence which [did] not conform to the statutory provision, either in the character or the term of punishment authorized." Id. (internal quotation marks and citation omitted).[8]

Third, this characterization of the Carmichael remedy is consistent with Williams' underlying rationale. The Williams court based its conclusion on the Kansas legislature's intent to punish less severely those sex-crime offenders who were related to their victim. 829 P.2d at 895. Carmichael adheres to this legislative intent by imposing "less serious" punishment on perpetrators who are

---

[8] Under Kansas law, an "illegal sentence" also results if a sentence is "imposed by a court without jurisdiction" or "is ambiguous with respect to the time and manner in which it is to be served." Carmichael, 872 P.2d at 245 (internal quotation marks and citation omitted). However, neither of these circumstances is present here.

convicted of general sex crimes but are related to their victims. Cf. id. It is irrelevant whether we agree or disagree with the propriety of the Kansas courts' decision to decide the appropriate sentence for a general sex offense conviction by reference to the allowable penalty range for aggravated incest; the question is one of Kansas state law and Kansas statutory interpretation.

### 3. Constitutional Analysis

We must next consider whether the Kansas state courts committed constitutional error in determining the appropriate sentences for general sex offenses by reference to the allowable penalty for aggravated incest. We acknowledge that, in determining whether the petitioners were entitled to the Carmichael remedy, the Kansas state courts were required to determine whether petitioners met the kinship requirement set forth in the aggravated incest statute, Kan. Stat. Ann. § 21-3603. Crucial to our constitutional analysis, however, is the fact that the Carmichael remedy resulted in a reduction to petitioners' sentences.

The Due Process Clause only requires that aggravating sentencing factors be proven at trial. Apprendi v. New Jersey, 530 U.S. 466, 481-82 (2000). As the Supreme Court has stated, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490 (emphasis added); see also Harris v. United States, 122 S. Ct. 2406, 2418 (2002)

-12-

("[O]nce the jury finds all those facts [required for the maximum sentence], Apprendi says that the defendant has been convicted of the crime; the Fifth and Sixth Amendments have been observed; and the Government has been authorized to impose any sentence below the maximum."). In applying this constitutional rule, "the relevant inquiry is one not of form, but of effect – does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" Id. at 494 (emphasis added). With respect to petitioners' cases, the answer is plainly no. Accordingly, the Kansas state courts' application of the Carmichael remedy comported with due process.

Petitioners' reliance on Cole v. Arkansas, 333 U.S. 196 (1948), is misplaced. In Cole, the Supreme Court held that "[t]o conform to due process of law, [criminal defendants are] entitled to have the validity of their convictions appraised on consideration of the case as it was tried and as the issues were determined in the trial court." Id. at 202. In Cole, the petitioners had been tried and convicted of promoting, encouraging, or aiding an unlawful assemblage, and they challenged the constitutionality of the statutory section defining that offense. Id. at 199-200. The Supreme Court of Arkansas, however, refused to address the constitutionality of the statutory provision of conviction and instead affirmed the appellants' convictions on the ground that they had violated a different section of the same statute. Id. at 200. That section defined a distinct crime of participating

-13-

in an unlawful assemblage, which included an element of force or violence; no element of force or violence, however, had been presented to the jury as a necessary element for conviction. Id. at 199-201. The U.S. Supreme Court reversed, because the state court "ha[d] not affirmed these convictions on the basis of the trial petitioners were afforded." Id. at 201.

In contrast to Cole, petitioners' cases did not involve affirmation of a conviction based on one offense, where the underlying conviction was for a separate and distinct offense. Rather, the Kansas courts "affirmed [the petitioners'] convictions on the basis of the trial petitioners were afforded." See id. at 201. Accordingly, petitioners' cases are outside the ambit of Cole.

Petitioners' reliance on our decision in Von Atkinson v. Smith, 575 F.2d 819 (10th Cir. 1978), [9] is equally unavailing. In Von Atkinson, the State had charged the defendant with sodomy under a Utah sodomy statute that did not require proof of force. Id. at 820. Under this statute, the offense carried the possibility of 3 to 20 years in prison. Id.

Following the sodomy charge but before the defendant's guilty plea or

_____

[9] We recognize that habeas relief is only proper where a state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (emphasis added). Nevertheless, we consider our decision in Von Atkinson as it informs our analysis of petitioners' constitutional claims under Apprendi and Cole.

-14-

sentencing, Utah revised its sodomy law, creating two distinct offenses: (1) misdemeanor sodomy, which did not require force and was punishable by up to 6 months imprisonment, and (2) forcible sodomy, a felony punishable by 1 to 15 years imprisonment. Id. Utah law "require[d] that [the defendant] be given the benefit of the reduced penalt[ies] provided by the new statute." Id. at 821. Accordingly, Utah law prohibited application of the allowable sentence under the prior sodomy statute.

The Utah state court sought to impose the harsher sentence permitted under the new forcible sodomy statute. Id. at 820. Over the defendant's objection, the court "conducted a 'hearing' to determine whether force had been employed in accomplishing the act of sodomy." Id. After concluding that the defendant had used force, the state court sentenced the defendant under the forcible sodomy statute. Id.

We vacated the Utah court's judgment, characterizing its action as "a trial and conviction for an uncharged crime." Id. at 821. The defendant had pled guilty to sodomy under the old Utah statute – an offense which did not require the use of force. Id. Under applicable Utah law, non-forcible sodomy carried a possible penalty of no more than 6 months. Id. at 820. The Utah state court, however, sentenced defendant for the distinct offense of forcible sodomy – an offense carrying a possible penalty of 1 to 15 years. Id. at 821. We noted that

"due process does not permit one to be tried, convicted or sentenced for a crime with which he has not been charged or about which he has not been properly notified." Id. (citations omitted). Accordingly, we reversed, relying on Cole.

We also dismissed as "irrelevant" the state's argument that the forcible sodomy statute carried a less severe penalty than did the old Utah sodomy statute under which the defendant was charged. Id. State law plainly mandated sentencing according to the new statute and prohibited the old statute's harsher sentence. Id. at 820-21. Accordingly, for constitutional purposes we were required to consider the allowable sentences under the two newly defined offenses: up to 6 months for misdemeanor sodomy versus 1 to 15 years for forcible sodomy. So construed, this aspect of Von Atkinson case presented a straightforward application of the principle later articulated in Apprendi. As in Apprendi, the Utah state court's hearing, in which it concluded that the defendant used force, "expose[d] the defendant to a greater punishment than that authorized by the [defendant's guilty plea]." Apprendi, 530 U.S. at 494.

With this guidance, we consider the course of events in the Kansas state courts. P etitioners do not contend that they suffered any constitutional deprivation when the State charged them with general sex crimes rather than aggravated incest. Nor do they provide us with any basis to conclude, as a matter of Kansas law or federal constitutional law, that violation of a state law charging

rule invalidates the resulting conviction or precludes the imposition of a

sentence. [10] It is only the Kansas state courts' application of the        Carmichael

---

[10] Indeed, Carmichael explicitly rejected the defendant's request to set aside his convictions. 872 P.2d at 242, 247 (reversing the Kansas Court of Appeals' grant of the defendant's motion to set aside his convictions). Accordingly, even if we were to agree with petitioners that the Carmichael remedy violated their constitutional rights, we could not vacate their convictions. To do more than return the petitioners to the position they occupied prior to the alleged constitutional violation would require us to fashion both (1) a constitutional remedy and (2) a state law remedy. We are vested with the limited authority to address the former.

Our review of state court decisions is limited to consideration of questions of federal and constitutional law. The underlying violation that led to the Carmichael remedy was one of purely state law. Ultimately, then, even assuming the Carmichael remedy were found to be unconstitutional, this court could not formulate an alternative remedy. Rather, we would vacate the reduced sentence and remand for further proceedings. What other remedy, if any, should apply in the absence of the Carmichael remedy would be a matter for the Kansas courts. Since the original convictions stand under Carmichael, it is quite possible that such a result would merely lead to reinstatement of the original sentences.

Significantly, it appears likely that defendants have waived any right under Kansas law to request that a court vacate their convictions. In Williams, the Kansas Supreme Court only addressed the situation before it: the defendant objected to the complaint "at the conclusion of the preliminary examination." State v. Sims, 862 P.2d 359, 364 (1993). Generally, under Kansas law, the failure to challenge defects in the charging instrument before trial constitutes a waiver. Id. at 365 (citing Kan. Stat. Ann. § 22-3208(3), which provides: "Defenses and objections based on defects in the institution of the prosecution or in the complaint, information or indictment other than that it fails to show jurisdiction in the court or to charge a crime may be raised only by motion before trial. . . . Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver."); see also Kan. Stat. Ann. § 22-3208(4) ("A plea of guilty or a consent to trial upon a complaint, information or indictment shall constitute a waiver of defenses and

(continued...)

-17-

remedy that the petitioners contend violated their due process rights.

Because the Carmichael remedy only affected petitioners' sentences, our constitutional analysis turns upon the "effect" of the state court's action. See Apprendi, 530 U.S. at 494. Here, the petitioners' underlying convictions for general sex crimes remain intact and their sentences are less " than that authorized by the jury's guilty verdict." See id. We fail to see how this result falls short of the requirements of the Due Process Clause. When federal law mandates no remedy at all for a state law violation, but state law nonetheless provides a remedy in the form of a reduced sentence, we cannot conclude that federal law requires (or even permits) a federal court to order that state law provide a more generous remedy. Accordingly, we reject petitioners' request that we vacate their reduced sentences based on their convictions for rape and indecent liberties with a child.

---

[10](...continued)
objections based upon the institution of the prosecution or defects in the complaint, information or indictment other than that it fails to show jurisdiction in the court or to charge a crime."). Notwithstanding the waiver statutes, a defendant can attack the charging instrument for lack of jurisdiction or failure to charge a crime, in a motion to arrest judgment, which must be filed within ten days of the verdict. Sims, 862 P.2d at 365 (citing Kan. Stat. Ann. § 3502). However, a defendant cannot use a motion to arrest judgment if, under Williams, he was incorrectly charged with a general rather than a specific sex crime. Id. at 367. The Carmichael remedy thus gives the defendant the benefit of aggravated incest's lesser penalty, even though the defendant failed to object to the charging instrument at the proper point in the proceedings.

## III. Conclusion

Petitioners challenge the Kansas courts' remedy for a violation of a state law rule. The remedy reduced the sentences that petitioners otherwise would have served. We cannot conclude that because the Kansas courts in their discretion have provided some remedy for the violation of state law, the federal Constitution requires that they provide a more sweeping remedy. Under these circumstances, petitioners have failed to show that the Kansas courts' disposition of their claims was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

We therefore AFFIRM the district court's denial of the petitions for habeas corpus.

**No. 00-3224,** *Beem v. McKune, et al.*

**No. 00-3249,** *Henson v. McKune, et al.*


**O'BRIEN**, Circuit Judge, concurring, with whom **KELLY** and **HARTZ**, Circuit Judges, join.

I fully concur with the result reached by the majority and have no quarrel with its reasoning or the grounds upon which it rests the decision. I write separately only because addressing these appeals on the merits cloaks the arguments with undeserved dignity. This case is not about guilt or innocence; without question, these defendants molested children. It is not about process; both men have enjoyed a full measure. It is about Justice, writ large. It tests systemic resistance to abuse. It exceeds elastic limits.

Judicial estoppel is the appropriate basis for decision on these facts. It is a discretionary remedy courts may invoke "to prevent the perversion of the judicial process." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting *In re Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990)). Several factors aid a court in determining when to apply judicial estoppel. "First, a party's later position must be 'clearly inconsistent' with its earlier position." *Id.* (citations omitted). Second, "whether the party has succeeded in persuading a court to accept that party's earlier position so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second

court was mislead.'" *Id*. (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982)). Third, "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id*. at 751.

Although *New Hampshire* is a civil case, the discussion and application of judicial estoppel does not appear so limited. *Id*. at 749-51. The type of case was not mentioned as a defining factor. To the contrary, the *New Hampshire* opinion freely cites both civil and criminal cases. *See e.g.*, *Russell v. Rolfs*, 893 F.2d 1033 (9th Cir. 1990) (criminal case); *Davis v. Wakelee*, 156 U.S. 680 (1895) (civil case); *United States v. Hook*, 195 F.3d 299 (7th Cir. 1999) (criminal case); *Allen v. Zurich Ins. Co.*, 667 F.2d 1162 (4th Cir. 1982) (civil case); *United States v. McCaskey*, 9 F.3d 368 (5th Cir. 1993) (criminal case). Judicial estoppel should be universally available because its "underlying purposes . . . are the same in both civil and criminal litigation—to protect the integrity of the judicial process and to prevent unfair and manipulative use of the court system by litigants." *McCaskey*, 9 F.3d at 379.

The arguments of Messrs. Beem and Henson beg for a summary response. Their actions easily satisfy the three-part test announced in *New Hampshire*. First, their current position (the element of kinship necessary for incest was not alleged and proved) is the antipode of their previous position (they were, in fact,

related to their respective victims in the very way they now claim lacks record support). Next, their actions would certainly leave even the most casual observer to conclude "that either the first or the second court was misled." *New Hampshire*, 532 U.S. at 750 (quoting *Edwards*, 690 F.2d at 599). Messrs. Beem and Henson successfully convinced Kansas courts of the filial relationship they now seek to negate in the federal courts. Finally, were they to succeed in this charade, they would "derive an unfair advantage" and "impose an unfair detriment." *Id*. at 751. In 1989, a jury convicted Mr. Beem of taking indecent liberties with a child. In 1995, his sentence was reduced based solely upon his argument that he was related to his victim and should have been treated accordingly. In 1992, a jury convicted Mr. Henson of raping his step-daughter. He also played the kinship card, which yielded a reduced sentence for him in 1994.

Now, more than a decade after their convictions, both men seek to vacate those convictions and sentences in spite of a fully adequate decision by the Kansas Supreme Court resolving the anomaly in Kansas law. *Carmichael v. Kansas*, 872 P.2d 240 (Kan. 1994). Granting habeas relief would leave the State with the Hobson's choice of dismissing the case entirely or retrying them for aggravated incest. *See Beem v. McKune*, 278 F.3d 1108, 1114 (10th Cir. 2002). A retrial on these facts is singularly inopportune because (1) it "imposes

significant social costs" of time and money, (2) convictions become more improbable with each passing year because of "erosion of memory" and "dispersion of witnesses," and (3) "society's interest in the prompt administration of justice" is frustrated. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quotations and citations omitted). Implied, but not directly mentioned, in the *Brecht* analysis is another form of decay; inertia, along with prosecutorial zeal, is lost on a ten year old case when the state's resources are fully occupied with new crimes and still writhing victims. The systemic burdens are palpable and in no way tempered by offsetting benefits since the arguments are unencumbered by credible claims of innocence.

For years, this circuit has taken a minority position in rejecting the principle of judicial estoppel. *United States v. 162 Megamania Gambling Devices*, 231 F.3d 713, 726 (10th Cir. 2000); *United States v. 49.01 Acres of Land, More or Less, Situate in Osage County, Okla.*, 802 F.2d 387, 390 (10th Cir. 1986). Now is the time to embrace the invitation extended by the Supreme Court in *New Hampshire* and join other circuits in reining in those litigants who play "fast and loose with the courts." *Sperling v. United States*, 692 F.2d 223, 227 (2d Cir. 1982) (Graafeiland, J., concurring) ("*Sperling II*").[1]

---

[1]The majority opinion for *Sperling II* consists both of Judge Timbers "majority" portion and Judge Van Graafeiland's concurrence. As Judge Timbers
(continued...)

Sperling successfully argued that a conspiracy count was a lesser included offense of continuing criminal enterprise. *United States v. Sperling*, 560 F.2d 1050 (2d Cir. 1977) ("*Sperling I*"). Buoyed with success he returned to the district court with a 28 U.S.C. § 2255 petition seeking to have the enterprise count vacated upon grounds inconsistent with his former arguments. *Sperling II* at 225, 228. His inconsistency did not resonate with the Second Circuit. "Whether we base our holding on a theory of estoppel, waiver, preclusion, or abuse of writ, we should not permit such piecemeal, inconsistent, and mutually exclusive attacks on a judgment of conviction as have occurred in this case." *Id.* at 228-29.

Likewise, a district court would not permit a criminal defendant who successfully argued in one proceeding to specifically enforce his plea agreement, to later argue the entire plea agreement, including his guilty plea, should be set aside. *United States v. Velez Carrero*, 140 F.3d 327 (1st Cir. 1998). The First Circuit affirmed upon the able opinion of the district court, but it went out of its way to articulate four additional reasons for rejecting the defendant's arguments, among them was judicial estoppel. It reasoned when a defendant prevails upon a

---

[1](...continued)
explained, "[s]ince I agree with Judge Van Graafeiland's concurring opinion . . . and he agrees with mine, the two opinions together constitute the majority view of this court." *Sperling II*, 692 F.2d at 224 n.*.

stated position and later attempts to take unfair advantage by inconsistently arguing against that prior successful position, "[s]uch an arbitrary about-face cannot be countenanced." *Id*. at 330.

In light of *New Hampshire*, we can no longer categorically eschew judicial estoppel. We should exercise our discretion to reject perverse argument, husband our resources, and protect the integrity of the judicial system.

**No. 00-3224, <u>Beem v. McKune, et al.</u>**

**No. 00-3249, <u>Henson v. McKune, et al.</u>**


**McKAY**, Circuit Judge, dissenting, with whom **SEYMOUR**, **HENRY**, and **LUCERO**, Circuit Judges, join.

I respectfully dissent. Pursuant to Kansas law as stated in <u>State v. Williams</u>, 829 P.2d 892 (Kan. 1992), Petitioners were incorrectly charged, tried, and convicted of a crime. <u>Williams</u>, citing Kansas Statute § 21-3603 (in effect at the time), holds that when a defendant is related to his victim he "*must be charged* with aggravated incest and not indecent liberties with a child." <u>Carmichael v. State</u>, 872 P.2d 240, 246 (Kan. 1994) (emphasis added). It is undisputed that Petitioners should have been charged from the beginning with aggravated incest. To reduce this case to merely remedying an erroneous sentence, as the majority has done, is to ignore the fact that the sentence is erroneous because Kansas law prohibits the charge upon which the sentence is based.

This case turns on <u>Carmichael</u> because it is the last definitive statement from the Kansas Supreme Court. In <u>Carmichael</u>, the Kansas Supreme Court stated that "[i]n [<u>State v. Moore, 748 P.2d 833 (Kan. 1987)</u>], . . . [w]e held [that] aggravated incest is not a lesser included crime of rape. . . . [E]ach crime

required proof of an *element* not required by the other, and therefore, aggravated incest is not a crime which is necessarily proved if the crime of rape is charged and proved." Carmichael, 872 P.2d at 245 (emphasis added). The Carmichael court referred with approval to cases from other jurisdictions, which are cited in Moore, holding that rape and incest are separate and independent crimes. "The basic rationale in these cases is that rape and incest have different elements and therefore are *distinct offenses*." Id. at 246 (emphasis added).

In discussing the fact that Williams in effect overruled Moore, referring to procedural aspects of the case, the Carmichael court said:

> In so doing, we did not embrace the rationale that there is one wrongful act, *i.e.*, forcible sexual intercourse, and where incestuous, the crime of incest is included in and merges with the crime of rape. *Nor do we do so now.* Although the conduct prohibited in aggravated incest and rape can be identical, *i.e.*, sexual intercourse, *the offenses are not.* Aggravated incest requires the additional elements of a victim under 18 years of age, kinship, and that the offender be aware of the kinship. Rape requires force; aggravated incest does not. For that reason, we have held that *aggravated incest is not included in nor merges with the offense of rape.*

Carmichael, 872 P.2d at 246 (emphasis added). While there is language in Carmichael stating that it overruled Moore, the Kansas Supreme Court is clearly referring to the procedural fact that, pursuant to Kansas law, a person cannot be charged with both aggravated incest and indecent liberties with a child or with both aggravated incest and rape where the two charges grow out of the same set

-2-

of facts.  Id. at 246-47.

Carmichael further holds that the appropriate remedy for a Williams'
violation is "to vacate the sentence imposed for rape and resentence the petitioner
for aggravated incest."  Id. at 247.  However, Carmichael did not overturn
Williams.  Instead, Carmichael affirmed the Williams' principle that when a
defendant is related to his victim he "*must be charged* with aggravated incest and
not indecent liberties with a child."  Id. at 246 (emphasis added).  The Carmichael
court relied on its statutory authority to "correct an illegal sentence."  Id. at 245.
However, as stated above, it is not just the sentence that is invalid.  This case
involves more than merely an illegal sentence.  Petitioners were incorrectly
charged, tried, and convicted of a crime.  Pursuant to Kansas law as interpreted by
Williams and Carmichael, Petitioners were charged and convicted under the
wrong statute.  As drafted by the Kansas legislature, and interpreted by the
Kansas Supreme Court, indecent liberties with a child and aggravated incest are
two separate crimes.[1]

Kansas' proposed solution in Carmichael directly violates the law set forth
by the United States Supreme Court in Cole v. Arkansas, 333 U.S. 196 (1948).  In

---

[1] We further note that these two different crimes are defined in two separate
sections of the Kansas statutes.  Additionally, there is no language in the statutes
suggesting that § 21-3603 (aggravated incest) is a subset of, or a mere sentencing
factor for, § 21-3503 (indecent liberties with a child).

Cole, the defendants were convicted of promoting an unlawful assembly under Section Two of a state statute. On appeal, the Arkansas Supreme Court held that the information filed against the defendants *also* violated Section One of the same statute and affirmed the defendants' convictions based solely on Section-One grounds. The United States Supreme Court reversed, stating:

> We therefore have this situation. The petitioners read the information as charging them with an offense under § 2 of the Act, the language of which the information had used. The trial judge construed the information as charging an offense under § 2. He instructed the jury to that effect. He charged the jury that petitioners were on trial for the offense of promoting an unlawful assemblage, not for the offense "of using force and violence." Without completely ignoring the judge's charge, the jury could not have convicted petitioners for having committed the separate, distinct, and substantially different offense defined in § 1. Yet the State Supreme Court refused to consider the validity of the convictions under § 2, for violation of which petitioners were tried and convicted. It affirmed their convictions as though they had been tried for violating § 1, an offense for which they were neither tried nor convicted.
>
> No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal. . . . It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made.

Id. at 200-01. The Court reversed the Arkansas Supreme Court on Fourteenth Amendment due process grounds.

In the present case, the majority has ignored the Supreme Court's mandate in Cole. Mr. Henson was charged, tried, and convicted of rape, and Mr. Beem was charged, tried, and convicted of indecent liberties with a minor. As the Kansas Court of Appeals in these cases held (based on Carmichael), under Kansas law, both should have been charged, tried, and convicted of aggravated incest. Vacating Mr. Henson's and Mr. Beem's sentences and then sentencing them instead for aggravated incest (because their conduct also violates that statute) clearly violates Petitioners' due process rights because they were never charged, tried, nor convicted of aggravated incest. As this court previously stated, "[w]hat . . . is before us now is the fundamental due process question of whether one can be sentenced for a crime not charged and to which no plea of guilty has been entered. *The answer is an unequivocal no*." Von Atkinson v. Smith, 575 F.2d 819, 821 (10th Cir. 1978) (applying Cole) (emphasis added).

The primary elements of due process–notice of the charge and an opportunity to defend against the charge–are not present here even though it is now undisputed that Petitioners were related to their victims. Courts are forbidden from directing verdicts against criminal defendants on any element of a crime. See Sullivan v. Louisiana, 508 U.S. 275, 277 (1993) ("[A]lthough a judge

-5-

may direct a verdict for the defendant if the evidence is legally insufficient to establish guilt, he may not direct a verdict for the State, no matter how overwhelming the evidence."). This court is prohibited from taking judicial notice of any element of the crime of aggravated incest, regardless of how easily the particular element could have been proven. This prohibition includes taking judicial notice of the relationship between the Petitioners and their victims.

It is immaterial that the new sentences imposed on the Petitioners expose them to less punishment than their sentences for rape or indecent liberties with a minor. "It is irrelevant that the sentence for the uncharged crime is less than that for the one charged." Von Atkinson, 575 F.2d at 821. Allowing the State to re-sentence Mr. Henson and Mr. Beem for crimes for which they were not charged, tried, or convicted violates a basic tenet of our judicial system. All criminal defendants are considered innocent until proven guilty after a full and fair trial.

In my view, this case has nothing to do with Apprendi v. New Jersey, 530 U.S. 466 (2000). Apprendi deals solely with aggravating sentencing factors which result in a sentence in excess of the statutory maximum for the crime which is *properly* the basis of a valid conviction. It merely holds that the Due Process Clause requires that such aggravating sentencing factors must be proven at trial. Apprendi has to do with the due process effect of a sentencing statute which results in the imposition of a sentence for *the crime of conviction*. The

Carmichael remedy is an attempt to remedy *an invalid conviction* by re-sentencing for a different crime with different elements requiring definition by a different criminal statute. In my view, it is clear from the Kansas cases construing the Kansas statutory scheme that the crime of incest is distinct from the crimes of conviction in these two cases. "[A]ggravated incest is not a lesser included crime of rape. . . . [E]ach crime require[s] proof of an *element* not required by the other, and therefore, aggravated incest is not a crime which is necessarily proved if the crime of rape is charged and proved." Carmichael, 872 P.2d at 245 (emphasis added).

Apprendi is irrelevant to the cases before us because these are not simply sentencing statutes, they are *separate crimes*.[2] There is nothing to suggest that Apprendi has either overturned or superceded Cole, even in a case like the one before us where the State has applied an Apprendi-like remedy where the underlying conviction is for the wrong crime.

The majority is persuaded that the Carmichael remedy is merely a sentencing reduction remedy because Petitioners' convictions for indecent

_____

[2] The majority has essentially treated Apprendi as a harmless error rule by holding that where the "effects" of the state court action result in a sentence less "than that authorized by the jury's guilty verdict" the requirements of the Due Process Clause are met. Maj. Op. at 17 (quoting Apprendi, 530 U.S. at 494). This is inapposite. Apprendi requires due process in imposing an aggravated sentence; it does not excuse a lack of due process simply because a lighter sentence is imposed.

liberties with a child still stand. That is a mistaken reading of what the Kansas court has done. It is unmistakably clear that Kansas has instead tried to apply a sentencing remedy in order to correct an admittedly erroneous conviction. It is constitutionally impermissible to let stand a crime that was charged and tried in error by the mere expedient of reducing the sentence to the level of the one that should have been charged and tried.

In sum, it is clear from reading the definitive Kansas cases that the Kansas Court of Appeals (and the Kansas Supreme Court in <u>Carmichael</u>) concluded that Defendants were tried and convicted for the *wrong crime* but were of the view that they were at constitutional liberty to cure the problem by sentencing Defendants for the crime for which they should have been charged without the benefit of either trial or conviction of essential elements of the correct crime. No matter how strong the evidence of the non-charged, non-tried, and non-convicted crime, <u>Cole</u> makes it abundantly clear that they may not do so.

The constitutional error of vacating the Defendants' sentences and sentencing them for a crime for which they were not charged, tried, or convicted cannot constitute harmless error. While it may not be structural error to leave an element out of the indictment, surely it is error to indict, try, and convict of the wrong offense. This is not a simple case where an element was omitted; instead, Defendants were indicted, tried, and convicted of the whole wrong crime.

Harmless error deals with errors in the trial process. In the instant case, the error infects the *entire series of events* from indictment to trial to conviction. Defendants were indicted under charges that did not include all necessary elements of aggravated incest–in fact, they were not charged with aggravated incest at all.[3] Additionally, Defendants did not proffer a defense regarding the missing elements and their juries were not instructed as to all elements of aggravated incest. Finally, Defendants were convicted of crimes of which Kansas law dictates *they cannot properly be convicted*, and these convictions still stand.

The only conceivable way we could permit a sentence for aggravated incest to be entered against Mr. Henson and Mr. Beem is to take judicial notice of the essential element of kinship–an impermissible endeavor–and ignore the fact that they continue to serve sentences for crimes which Kansas says they cannot be convicted. This court must not jettison its responsibility to vigilantly protect the inviolate right of all defendants to be charged, tried, and convicted of the crime for which they are imprisoned.

This situation differs markedly from cases in which an uncharged element relates to a *sentencing* enhancement or inclusive offense and the court applies

---

[3] The harmless error inquiry might be different if the convictions for rape and indecent liberties with a child had been vacated along with decreasing Defendants' sentences. However, Defendants' original *illegal* convictions still stand. It is impossible and inconceivable that illegal convictions could constitute harmless error under any reading of that doctrine.

harmless error to evaluate the sufficiency of the evidence. See United States v. Cotton, 535 U.S. 625 (2002) (evaluating sufficiency of evidence to justify sentencing enhancement for possession of over fifty grams of cocaine when defendant was charged with "detectable amount" of cocaine). In the present case, the Defendants were charged with a crime that is *entirely separate* from the ones for which they were sentenced, as determined by the Kansas courts: "[T]he crimes of incest and rape in Kansas . . . have been considered to be separate and independent crimes." Carmichael v. State, 872 P.2d at 245. Because Neder v. United States, 527 U.S. 1 (1999), does not involve separate crimes but rather involves only a missing element, materiality, in the instructions for the charged crime, it is not relevant to our inquiry. Neder simply concludes that "the omission of an element is an error that is subject to harmless-error analysis." Id. at 15.

Because the crime charged and the crime of conviction are *separate and independent*, Sullivan v. Louisiana, 508 U.S. 275, 277 (1993), and Rose v. Clark, 478 U.S. 570, 578 (1986), are implicated. Since there has been no jury verdict within the meaning of the Sixth Amendment, the premise for harmless-error analysis is absent. Sullivan's reasoning applies equally to our case:

> [T]he illogic of harmless-error review in the present case [is] evident. Since . . . there has been no jury verdict within the meaning of the Sixth Amendment, the entire premise of [harmless-error] review is simply absent. There being no jury verdict of guilty-beyond-a-reasonable-doubt [for aggravated incest], the question

whether the *same* verdict of guilty-beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless. There is no *object,* so to speak, upon which harmless-error scrutiny can operate. The most an appellate court can conclude is that a jury *would surely have found* petitioner guilty beyond a reasonable doubt–not that the jury's actual finding of guilty beyond a reasonable doubt *would surely not have been different* absent the constitutional error. That is not enough. . . . The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal; it requires an actual jury finding of guilty.

Sullivan, 508 U.S. at 280 (emphasis in original).

The imprisonment of an individual for a crime for which they were not charged, tried, and convicted cannot be considered harmless error. Sentencing a defendant for a crime that is totally discrete (i.e. not related as being a lesser or greater offense or as a sentencing factor) from the crime for which he was indicted violates due process. This falls within the "limited class of fundamental constitutional errors that defy analysis by harmless error standards. Errors of this type are so intrinsically harmful as to require automatic reversal *without regard to their effect on the outcome*." Neder, 527 U.S. at 7 (internal quotations and citations omitted) (emphasis added). There is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process

itself." Id. at 8 (quoting <u>Arizona v. Fulminante</u>, 499 U.S. 279, 310 (1991)).[4]

The judicial estoppel issue, as applied in these circumstances, is novel and has not been raised or briefed. While there may be some comfort in the we-all-know-they-are-guilty argument, we are sitting as a court of law in a criminal case, not as a court of equity. The judicial estoppel argument was not raised or argued by the parties and is too novel a notion in this case to be addressed without the benefit of briefing.

The concurrence argues that we should apply judicial estoppel and convict these Defendants of *something* in the name of "Justice, writ large." Concurrence at 1. While the concurrence appropriately notes that this circuit has rejected judicial estoppel, <u>see</u>, <u>e.g.</u>, <u>McGuire v. Continental Airlines, Inc.</u>, 210 F.3d 1141, 1145 n.7 (10th Cir. 2000) (Kelly, J.) ("[I]t is well established that judicial estoppel does not exist in the Tenth Circuit."), it urges this court to reject its "minority" view and adopt the doctrine *sua sponte*. While I can imagine a

---

[4]    The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact rendered–no matter how inescapable the findings to support that verdict might be–would violate the jury-trial guarantee.

<u>Sullivan</u>, 508 U.S. at 279 (emphasis in original).

-12-

situation in which this circuit could revisit its categorical rejection of judicial estoppel, this is not it.

The concurrence notes that the Supreme Court has recently endorsed the notion of judicial estoppel. In <u>New Hampshire v. Maine</u>, 532 U.S. 742 (2001), the Court invoked judicial estoppel to prevent the State of New Hampshire from changing its argument as to the precise location of its border with the State of Maine. <u>Id.</u> at 755. While that was a civil case, the concurrence notes that the Supreme Court "freely cites both civil and criminal cases." Concurrence at 2. However, none of the criminal cases cited reaches the conclusion that the concurrence suggests. Most importantly, in none of those three cases is judicial estoppel applied *against a criminal defendant*. In each case, the respective courts dutifully described what judicial estoppel is, but in none of them did they apply the doctrine as the concurrence would like to do here.

In <u>Russell v. Rolfs</u>, 893 F.2d 1033 (9th Cir. 1990), the State of Washington had argued to the federal district court that the defendant should be denied federal relief because "he had an adequate and available state remedy," <u>id.</u> at 1038 (quotations omitted), yet it argued before the federal appellate court that the defendant's appeal for relief must be denied because he was procedurally barred in state court. The Ninth Circuit applied judicial estoppel against the State. In <u>United States v. Hook</u>, 195 F.3d 299 (7th Cir. 1999), the defendant tried to claim

that *the government* should be judicially estopped from prosecuting him, because the government had taken an inconsistent position in a related case. The court rejected that argument, doing so entirely on the basis that the government's positions in the two cases were *not* inconsistent. Thus, even if judicial estoppel were available for use against the government (which the court did not definitively address), it would not have helped the defendant.

Finally, in United States v. McCaskey, 9 F.3d 368 (5th Cir. 1993), the defendant again tried to apply judicial estoppel against the government. The government, notably, argued that judicial estoppel should not apply in criminal cases. The court did not reach that issue, because it held that the defendant had waived any claim of judicial estoppel by not raising it below. "Assuming without deciding that judicial estoppel can apply *to the government* in criminal cases, we believe that the underlying purposes of the doctrine are the same in both civil and criminal litigation–to protect the integrity of the judicial process and to prevent unfair and manipulative use of the court system by litigants." Id. at 379 (emphasis added). In other words, although it used broad language, the most the court was willing to consider was applying judicial estoppel *against the government* in a criminal case–but it did not even do that.

The Supreme Court in New Hampshire was therefore, by all appearances, simply collecting cases in which judicial estoppel was *discussed*, not where it was

-14-

applied. Moreover, the First Circuit case on which the concurrence relies heavily, United States v. Velez Carrero, 140 F.3d 327 (1st Cir. 1998), does *not* apply judicial estoppel to criminal cases. "Just as the companion doctrines of judicial estoppel and election of remedies preclude parties in civil litigation from asserting legal or factual positions inconsistent with the positions that they took in prior proceedings, so, too, a criminal defendant ordinarily must raise claims in a timely fashion, consistent with his prior positions in the case, or suffer the consequences." Id. at 330 (citation omitted) (emphasis added). The First Circuit thus argues, at most, that there is a general analogy to judicial estoppel for criminal cases; but it does not adopt judicial estoppel in that case. In fact, that court relied on contract doctrine for its holding, because the issue at hand was a plea agreement.

The concurrence does find a fractured opinion from the Second Circuit that invokes judicial estoppel against a criminal defendant, and perhaps there are other examples–though none that the Supreme Court cited. The point here, though, is that it would not only be unwise, but actually quite radical, to invoke judicial estoppel against a criminal defendant without–at least–having heard oral argument and having been briefed extensively before embarking upon such a sea change.

Furthermore, the issue of judicial estoppel has no relevance at this stage of the proceedings. As the concurrence notes, the first and most important

-15-

requirement in invoking judicial estoppel is to prevent a party from adopting a position which is "clearly inconsistent" with its earlier position. Concurrence at 1. The concurrence asserts that the Defendants' "current position (the element of kinship necessary for incest was not alleged and proved) is the antipode of their previous position (that they were, in fact, related to their respective victims in the very way they now claim lacks record support)." Id. at 2.

Neither Mr. Beem nor Mr. Henson have ever argued or claimed that they are *not* related to the victim but have merely claimed that since they *are* related to the victim their charge was invalid. Therefore, there is no inconsistent position to be estopped at this stage of the proceedings. If judicial estoppel were to apply at all, it would be at a subsequent trial. That matter, of course, is not before us.

In addition, I do not believe that the Defendants have in fact asserted an inconsistent position. At the very least, that threshold issue merits full briefing and argument before we make a decision based on that assumption. It is fully consistent for Defendants to come to this court and say that *because* they are related to their victims they cannot legally be imprisoned for the crimes of which they stand convicted. They do not ask us to believe that there are no familial relationships. Quite to the contrary, they ask us to recognize those relationships and to hold that Kansas' response to those relationships violates due process. Stating that kinship was not "alleged and proved" by the State, or more

-16-

fundamentally that Defendants were not even charged with a crime that would call for that relationship to be alleged and proved, is not at all inconsistent with Defendants' representations to the Kansas courts.

The concurrence goes on to note the second element of a judicial estoppel claim: "[J]udicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." Id. at 1 (quotations and citation omitted). Yet, a decision here in favor of Defendants need not create such a perception. We are not being hoodwinked when we recognize that the State of Kansas has imprisoned two bad men for the wrong crimes.

I would reverse and remand with directions to grant the writ of habeas corpus.

**No. 00-3224,** *Beem v. McKune, et al.*

**No. 00-3249,** *Henson v. McKune, et al.*


**HENRY**, Circuit Judge, dissenting, with whom **SEYMOUR** and **LUCERO**, Circuit Judges, join.

I join completely in Judge McKay's dissent. I write separately to emphasize several additional aspects of this case that are particularly troubling to me.

Seldom has Justice Holmes' warning that "hard cases make bad law" been more true. We are faced with two defendants who certainly appear to be guilty of something, in all likelihood aggravated incest. They stand, according to the majority, still convicted of another crime, in one case indecent liberties, and in the other rape. (The majority does admit that it is unclear whether the convictions were actually vacated. Opinion at 9.) Both the majority and the concurrence, rightly concerned with the defendants' apparent guilt, struggle to save the convictions.[1] Neither of these efforts, however, can withstand constitutional scrutiny.

Judge McKay admirably details the error of the Kansas courts, and his

---

[1]     I am confident, especially with the evidence of kinship on which the majority focuses, that the state will be able to mount a vigorous prosecution of each defendant for the proper crime.

refutations of the majority opinion's arguments are compelling. I am also troubled, however, by the majority opinion's characterization of one of the defendants' statements at oral argument. The opinion describes as a "concession" the statement that the defendants remain convicted of their original crimes. Opinion at 11 ("[P]etitioners conceded at oral argument that their recorded convictions are rape and indecent liberties with a child – *not* aggravated incest."). I do not see how that is a concession, since it is the very basis of the defendants' appeal: they are asserting that the Kansas courts have held that they cannot be convicted of the crimes for which they remain convicted. That the state courts either showed a modicum of mercy by reducing the sentences or simply followed the legislative intent as to the severity of these crimes does not make the constitutional violation go away--indeed, it worsens it, because the reduction in sentences was informed explicitly by the appropriate sentences for *different* crimes.

In addition, I simply cannot understand or adopt the majority opinion's attempt to distinguish this case from *Cole v. Arkansas*, 333 U.S. 196 (1948). The majority concludes that the *Cole* scenario is not before us, but rather "[i]n contrast to *Cole*, petitioners' cases did not involve affirmation of a conviction based on one offense, where the underlying conviction was for a separate and distinct offense." Opinion at 14. In *Cole*, the state court said, in essence, "You

are not guilty of Crime A, but we find you guilty of Crime B."  Here, the state

court said, "You cannot be guilty of crime A, but we will continue to say that you

are guilty of Crime A while we sentence you for Crime B."  If there is a

distinction there, it seems to be one without a difference.

The majority also argues that when "state law nonetheless provides a

remedy in the form of a reduced sentence, we cannot conclude that federal law

requires (or even permits) a federal court to order that state law provide a more

generous remedy."  *Id.* at 18.  The proper resolution of this case, however, cannot

be to *reduce* the defendants' sentences, because *any* sentences imposed for the

crimes of which they have been convicted are illegal sentences.  Our concern is

with constitutionality, not generosity.

While I have no doubt that there has been an error here, I was originally

convinced that we could judge that error to be harmless.  Judge McKay's dissent

makes it very clear that such a solution is not available to us.  Although *Neder v.*

*United States*, 527 U.S. 1 (1999), is therefore not controlling in this case, Justice

Scalia's dissent in *Neder* should make us seriously reconsider our decision here.

In that dissent, Justice Scalia quoted from one of Alexander Hamilton's

*Federalist Papers* to remind us just how central juries are to the American

criminal justice system:

> [T]he friends and adversaries of the plan of the
> convention, if they agree in nothing else, concur at least

> in the value they set upon the trial by jury:  Or if there is any difference between them, it consists in this, the former regard it as a valuable safeguard to liberty, the latter represent it as the very palladium of free government.

*Id.* at 31 (Scalia, J., dissenting) (citing The Federalist No. 83, at 426 (M. Beloff ed.1987)).

Justice Scalia went on: "Perhaps the Court is so enamoured of judges in general, and federal judges in particular, that it forgets that they (we) are officers of the Government, and hence proper objects of that healthy suspicion of the power of government which possessed the Framers and is embodied in the Constitution." *Id.* at 32 (parenthetical in original).  What we are doing in this decision, I fear, seriously undermines one of our most important safeguards to liberty.

Regarding judicial estoppel, I would add to Judge McKay's remarks only that this circuit's refusal to date to adopt that doctrine has not been mere oversight.  We have previously considered adopting judicial estoppel and have thoughtfully rejected it in both civil and criminal contexts for arguably good reasons.  *See, e.g., Rascon v. U.S. West Communications, Inc.,* 143 F.3d 1324, 1330-1332 (10th Cir. 1998) ("The Tenth Circuit . . . has rejected the doctrine of judicial estoppel as being inconsistent with the spirit of the Federal Rules of Civil Procedure.")  I continue to believe that there might be situations in which something like judicial estoppel would be appropriate, but I hope that we will not

invoke the doctrine *sua sponte*, because we should allow interested and motivated parties to present the best arguments available for and against applying the doctrine to civil and/or criminal cases. (I emphasize in particular that, in one of the criminal cases discussed in both the concurrence and the dissent, *it was the government that argued against applying judicial estoppel to criminal cases*. *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993)).

No matter how unsettling the results, we do not have one Constitution for good people and another for bad people. The decision that we write today has to cover not only the obviously unsympathetic defendants we have before us. What we say to these bad people will also apply to other less bad people, and even a few good people. The majority's approach reaches a result that is bound to come back to haunt us until we surely repudiate it in the future.

I respectfully dissent.